### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| Jessica Anderson | ) | |
| | ) | |
| Plaintiff, | ) | Case No. C-1-02-355 |
| | ) | |
| vs. | ) | Judge Weber |
| | ) | |
| Avon Products,  Inc. | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT AVON PRODUCTS, INC'S
### MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Avon Products, Inc. ("Avon") respectfully requests that the Court grant summary judgment on all claims alleged in Plaintiff Jessica Anderson's ("Plaintiff's") Complaint.  As explained more fully in the attached Memorandum in Support, Plaintiff cannot establish a triable issue of fact as to any of her claims. Accordingly, Avon is entitled to judgment as a matter of law.

Respectfully submitted,

/s/ Jeffery L. VanWay
Ellen J. Garling (0043554)
BAKER & HOSTETLER, LLP
Capitol Square, Suite 2100
65 East State Street
Columbus, Ohio  43215
(614) 228-1541

and

Jeffery L. VanWay (0069175)
Bryant L. Brewer (0072152)
BAKER & HOSTETLER, LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio  45202
(513) 929-3400
(513) 929-0303 – Fax
email: jvanway@bakerlaw.com
Trial Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2003, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to all

CM/ECF participants and I hereby certify that I have mailed the foregoing by regular U.S. mail,

postage prepaid on this 21st day of November, 2003, to Daniel A. Kruse, Attorney for Plaintiff,

1029 Main Street, Cincinnati, Ohio 45202.


/s/ Jeffery VanWay
Jeffery VanWay

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Jessica Anderson | ) | |
| | ) | |
| Plaintiff, | ) | Case No. C-1-02-355 |
| | ) | |
| vs. | ) | Judge Weber |
| | ) | |
| Avon Products,  Inc. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT AVON PRODUCTS, INC.'S MOTION FOR SUMMARY JUDGMENT**

**SUMMARY OF POINTS RAISED**
**AND AUTHORITIES RELIED UPON**

I.    **INTRODUCTION**                                         Page 1

II.   **FACTUAL BACKGROUND**                                   Page 1

      A.    **PLAINTIFF'S EMPLOYMENT WITH AVON**               Page 1

            1.    **FMLA Leave Procedure and Application**     Page 2

            2.    **Aetna Managed Disability Procedure Through Avon**   Page 9

            3.    **Plaintiff's Mitigation Efforts**           Page 12

III.  **LAW AND ANALYSIS**                                     Page 13

      A.    **SUMMARY JUDGMENT STANDARD**                      Page 13

Rule 56(c) of the Federal Rules of Civil Procedure

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)

Davis v. Robbs, 794 F.2d 1129, 1130 (6th Cir.), cert. denied,
479 U.S. 992 (1986)

First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968),
reh'g denied, 393 U.S. 901 (1968)

**B.     AVON IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM THAT AVON WRONGFULLY DISAPPROVED PLAINTIFF'S FMLA LEAVE.**                    Page 14

29 U.S.C. § 2615(A)(1)

29 U.S.C. § 2612(a)(1)(D)

29 U.S.C. § 2613

29 C.F.R. § 825.305

29 C.F.R. § 825.305(b)

29 U.S.C. § 2613

Shatb v. Greate bay Hotel and Casino, Inc., 173 F. Supp. 2d 255, (D.N.J.)

Robinson v. Franklin County Board of Commissioners, 2002 U.S. Dist. LEXIS 25681

Dillon v. Carlton, 977 F. Supp. 1155, (M.D. Fla. 1997)

Legrand v. Village of McCook, 1998 U.S. Dist. LEXIS 5230, *16 (N.D. Ill. 1998)

Green v. Labor & Indus. Review Comm'n, 654 N.W.2d 1, 9 (Ct. App. Wisc.)

Cavin v. Honda of Am. Mfg., 2002 U.S. Dist. LEXIS 19601, (S.D. Ohio 2002), reversed on other grounds, 2003 U.S. App. LEXIS 20722 (6th Cir. 2003)

Stoops v. One Call Communications, Inc., 141 F.3d 309, 313, 314 (7th Cir. 1998).

**C.     AVON IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM THAT AVON RETALIATED AGAINST PLAINTIFF FOR INVOKING HER RIGHTS UNDER THE FMLA.**                    Page 18

**1.**       **<u>Legal Standard</u>**                                                Page 18

<u>E.E.O.C. v. Avery-Dennison Corp.</u>, 104 F.3d 858
 (6th Cir. 1997)

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)

<u>St. Mary's Honor Ctr. V. Hicks</u>, 509 U.S. 502, 507 (1993)

**2.**       **<u>Plaintiff Cannot Establish A Prima Facie Case Of</u>**
             **<u>Retaliation Under The FMLA.</u>**                           Page 19

<u>E.E.O.C. v. Avery-Dennison Corp.</u>, 104 F.3d 858
 (6th Cir. 1997)

<u>Agee v. Northwest Airlines, Inc.</u>, 151 F. Supp. 2d 890
 (E.D. Mich. 2001).

<u>Robinson v. Franklin County Board of Commissioners</u>, 2002
 U.S. Dist. LEXIS 25681

**3.**       **<u>Avon Had A Legitimate, Nondiscriminatory Reason</u>**
             **<u>For Terminating Plaintiff's Employment</u>**               Page 21

<u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S.
 248, 252-53 (1981)

<u>E.E.O.C. v. Avery-Dennison Corp.</u>, 104 F.3d 858
 (6th Cir. 1997)

<u>Richardson v. CVS Corporation</u>, 207 F. Supp. 2d 733
 (E.D. Tenn. 2001)

**4.**       **<u>Plaintiff Cannot Show That Avon's Legitimate,</u>**
             **<u>Nondiscriminatory Reason For Terminating Plaintiff's</u>**
             **<u>Employment Is A Mere Pretext For Retaliation.</u>**        Page 22

<u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S.
 248, 252-53 (1981)

<u>E.E.O.C. v. Avery-Dennison Corp.</u>, 104 F.3d 858
 (6th Cir. 1997)

<u>Pierce v. Commonwealth Life Insurance Co.</u>, 40 F.3d 796,
 804 (6th Cir. 1994)

Mitchell v. Toledo Hospital, 964 F.2d 577,
  585 (6th Cir. 1992)

Rush v. United Technologies, 930 F.2d 453, 458
  (6th Cir. 1991)

Bush v. American Honda Motor Co., Inc., 227 F. Supp. 2d
  780, 797 (S.D. Ohio 2002)

Olive v. Columbia/HCA Healthcare Corp., Nos. 75249
  and 76349, 2000 Ohio App. LEXIS 914, at *14
  Cuyahoga Cty. Mar. 9, 2000

    **D.**    **EVEN IF THIS COURT DETERMINES THAT PLAINTIFF
  HAS MET HER BURDEN, WHICH AVON SPECIFICALLY
  DENIES, AVON IS ENTITLED TO SUMMARY JUDGMENT
  BECAUSE PLAINTIFF HAS FAILED TO ADEQUATELY
  MITIGATE HER ALLEGED DAMAGES.**    Page 24

29 U.S.C. § 2617

42 U.S.C. § 2000e-5(g)

Taylor v. Invacare Corp., 2003 U.S. App. LEXIS
  10318 (6th Cir. 2003)

Rasimas v. Michigan Dept. of Mental Health, 714 F.2d 614,
  623 (6th Cir. 1983)

**IV.**    **CONCLUSION**    Page 26

## I.    INTRODUCTION

On April 19, 2002, Plaintiff, Jessica Anderson formerly known as Jessica Elboussouni ("Plaintiff") filed a Complaint against Defendant, Avon Products, Inc. ("Avon") in the Common Pleas Court of Butler County alleging that Avon violated the Family and Medical Leave Act ("FMLA") when it denied her FMLA leave request and, ultimately, wrongfully terminated her employment. Avon removed the case to this Court and, then, filed an Answer denying these allegations. Now, Avon requests this Court grant summary judgment in its favor and dismiss this case because Plaintiff cannot establish a triable issue of fact with regard to any of her claims.[1]

## II.    FACTUAL BACKGROUND

### A.    PLAINTIFF'S EMPLOYMENT WITH AVON

Plaintiff began working for Avon as a temporary employee on October 20, 1997, in the Return Division as a Return Specialist. (See Deposition of Jessica Anderson ("Pl. Depo., p. __"), p. 45 and Defendant's Exhibit 2, attached to Pl. Depo.). Plaintiff worked as a Return Specialist until approximately September 1999 and in that capacity she communicated with bilingual Avon Representatives across the country to resolve issues they had with returned merchandise. (See Pl. Depo., pp. 45-46). In the Fall of 1999, Avon made Plaintiff a full time employee and she started working on the liquid roll-on line (Pl. Depo., pp. 46, 102-103). Plaintiff then transferred to the second shift soap line sometime after Christmas of 1999. (See Pl. Depo., pp. 104-105).

During Plaintiff's employment at Avon, Plaintiff maintained a record of poor, and unsatisfactory, attendance. (See Pl. Depo., p. 110; See also, Affidavit of Pamela Myers ("Myers

---

[1] Pursuant to this Court's Scheduling Order, Avon has filed its Proposed Findings of Fact and Conclusions of Law separately with the Court.

Aff., ¶____"), ¶4, copy attached hereto as Defendant's Exhibit 26).[2]  At the time of Plaintiff's full time employment, she received all of Avon's guidelines and procedures, which included Avon's Attendance Policy ("Policy").  (See Pl. Depo., p. 214).  Plaintiff understood that, under the terms of the Policy, any attendance rate above 3.0 percent would be unacceptable.  (See Pl. Depo., p. 214).  Avon counseled Plaintiff several times regarding her poor attendance.  (See Pl. Depo., p. 198).

Specifically, Plaintiff's supervisor in May 1998, Nancy Bonadio, placed a Memorandum in Plaintiff's personnel file indicating that Plaintiff had accumulated 85 hours of absence since the inception of her employment.  (See Defendant's Exhibit 19, attached to Pl. Depo.).  Ms. Bonadio indicated that "[i]f these absences continue to occur, Jessica's employment with Avon could be at risk."  (See Defendant's Exhibit 19, attached to Pl. Depo.).  In August 1999, Avon placed Plaintiff on restriction for a period of time and, once again, counseled her regarding her poor attendance.  (See Pl. Depo., p. 214).

Next, on February 15, 2000, Plaintiff's supervisor, Brian Bilz, met with Plaintiff to discuss Plaintiff's poor attendance.  (See Defendant's Exhibit 10, attached to Pl. Depo.).  Mr. Bilz informed Plaintiff at that time that she needed to show immediate and sustained improvement or further disciplinary action would be taken, up to and including termination.  (See Pl. Depo., p. 112; See also, Defendant's Exhibit 10, attached to Pl. Depo.).

### 1.    FMLA Leave Procedure and Application

At the time of Plaintiff's hire as a full time employee, she received documents regarding Avon's policies and procedures.  (See Pl. Depo., pp. 48, 54).  Included in those documents, Plaintiff received Avon's Family and Medical Leave Policy.  (See Pl. Depo., p. 48).  Avon's Family and Medical Leave Policy provides in pertinent part:

---

[2] Pursuant to the Electronic Filing Policies and Procedures Manual for the Southern District of Ohio, Avon delivered the original executed Affidavit to the Clerk's Office for scanning and uploading to the CM/ECF System.

G.    <u>Procedure for Requesting Family Care and Medical Leave</u>

1.    <u>Notice Requirements</u>

Associates should notify Avon's medical department
or the human resources department indicating that
they would like to request family care or medical
leave as soon as they are ware of the need for such leave.

\*        \*        \*

All requests for family care or medical leave should
include the anticipated date(s) and duration of leave…

2.    <u>Medical Certification</u>

Any request for medical leave for an Associate's own
serious health condition or family care leave to care for
a child, spouse, or parent with a serious health condition
must be supported by medical certification from a health
care provider.

For foreseeable leaves:

Associates must provide the required medical certification
before the leave begins…Failure to provide the required
medical certification may result in the denial of foreseeable
leaves until such certification is provided.

\*        \*        \*

The medical certification for a child, spouse, or parent
with a serious health condition shall include all of the
following information:

(a)      the date on which the serious health condition
commenced;
(b)      the probable duration of the condition;
(c)      the health care provider's estimate of the
amount of time needed for family care;
(d)      the health care provider's assurance that the health
care condition warrants the participation of the Associate
to provide family care; and
(e)      in the case of intermittent or reduced schedule
leave where medically necessary, the probable duration
of such a schedule.

3

> The medical certification for leave for the Associate's
> own serious health condition shall include all of the
> following information:
>
> (a)     the date on which the serious health condition
> commenced;
> (b)     the probable duration of the condition;
> (c)     a statement that, due to the serious health
> condition, the Associate is unable to perform the functions
> of his or her position; and
> (d)     in the case of intermittent leave or reduced
> schedule leave where medically necessary, the probably
> duration of such schedule.

(See 502 Leave of Absence, attached to Pl. Depo. as Defendant's Exhibit 3).

Although Plaintiff received Avon's Family and Medical Leave Policy, she claims she never looked at it to determine Avon's policy regarding Avon Associates taking FMLA leave. (See Pl. Depo., p. 61). Moreover, at the time of Plaintiff's full time employment, she received, and voluntarily signed, documentation indicating that Avon could terminate its employment relationship at any time or that Plaintiff could terminate the relationship at any time. (See Pl. Depo., pp. 55-56; See also, Defendant's Exhibit 2, attached to Pl. Depo.). With this document, Plaintiff understood that she did not have a contract with Avon for any specific period of time and that her employment with Avon was indefinite. (See Pl. Depo., p. 55).

During her employment at Avon, Plaintiff requested FMLA leave on two occasions. (See Pl. Depo., p. 49). The first time Plaintiff requested FMLA leave was in March 2000. (See Pl. Depo., p. 49). Specifically, Plaintiff sought intermittent leave to attend doctor's visits with her grandmother. (See Pl. Depo., p. 51). In order to request the FMLA leave, Plaintiff's mother gave her these forms as they are standard forms. (See Pl. Depo., p. 52).[3] Plaintiff completed the forms of documentation to substantiate her leave and provided these forms directly to Avon in an attempt to

---

[3] Plaintiff's mother works for Medical Recovery Services as a Recovery Specialist. (See Pl. Depo., pp. 52-53).

get leave.  (See Pl, Depo., pp. 50, 126).  As such, Plaintiff knew that Avon's policy for FMLA leave required Plaintiff to fill out the FMLA form and provide medical documentation to Avon.  (See Pl. Depo., p. 136).[4]

On April 11, 2000, before Plaintiff's request for leave, she spoke with Mr. Bilz indicating that she would not be able to work because of a medical condition.  (See Pl. Depo., p. 271).  Plaintiff's primary care physician, Dr. Hunter, had referred her to Dr. Leipzig for an opinion on a medical condition, hives, from which she was suffering.  (See Pl. Depo., p. 84).  Dr. Hunter further told Plaintiff to return to his office after she met with Dr. Leipzig.  (See Pl. Depo., p. 86).

Plaintiff had an appointment to see Dr. Leipzig on April 25, 2000.  That day, Plaintiff contacted Avon's medical department and spoke with Mary Anderson, R.N.  (See Pl. Depo., p. 64).  Plaintiff requested that Ms. Anderson send FMLA forms directly to her physician, Dr. Leipzig's office.  (See Pl. Depo., p. 64).  Ms. Anderson complied and faxed the forms to Dr. Leipzig's office.  (See Pl. Depo., p. 64; See also, Defendant's Exhibit 4, attached to Pl. Depo.).  Plaintiff completed a Request for Family Medical Leave while she was in Dr. Leipzig's office and returned it to Avon.  (See Pl. Depo., p.65; See also, Defendant's Exhibit 5, attached to Pl. Depo.).  In completing the Request Form, Plaintiff did not indicate the reason for her leave.  (See Defendant's Exhibit 5, attached to Pl. Depo.).  Moreover, Plaintiff failed to even identify any reason for her attempted leave.  (See Defendant's Exhibit 5, attached to Pl. Depo.).  Plaintiff also gave Dr. Leipzig the Medical Certification form and asked him to complete it and return it to Avon.  (See Pl. Depo., p.

---

[4] Plaintiff claims that she also had personal and marital problems during March 2000.  (See Pl. Depo., p. 77).  During that time period, Plaintiff saw her family physician, Dr. Vasi, who provided Plaintiff with time off from work due to stress.  (See Pl. Depo., pp. 78-79; See also, Defendant's Exhibit 6, attached to Pl. Depo.).  Dr. Vasi provided Plaintiff time out of work from March 9, 2000 through March 20, 2000.  (See Pl. Depo., p. 98; Defendant's Exhibit 6, attached to Pl. Depo.).   Plaintiff did not request, and/or consider requesting, FMLA leave for this time off from work.  (See Pl. Depo., p. 78).  Thus, Plaintiff was aware that she needed a release date to come back to work, with a note signed by her doctor.  (See Pl. Depo., p. 80).  Plaintiff does not recall if she ever asked for FMLA leave, but "was asking for time off work because of what was going on with me medically."  (See Pl. Depo., p. 65).

75).

Upon receiving Plaintiff's request for FMLA leave, on April 28, 2000, Pamela Myers, Business Unit Leader for the department in which Plaintiff worked, sent Plaintiff correspondence outlining Avon's policy on both Medical Leaves of Absence and FMLA Leave.  (See Pl. Depo., pp. 127-128;  See also, Defendant's Exhibit 12, attached to Pl. Depo.).  Plaintiff received this letter. (See Pl. Depo., p. 128).  Included in the letter was a requirement that Plaintiff complete the FMLA Request Form and have her physician complete the certification form.  (Se Pl. Depo., p. 129; See also, Defendant's Exhibit 12, attached to Pl. Depo.).  Plaintiff understood that she had an obligation to provide the FMLA form and her doctor's certification directly to Avon.  (See Pl. Depo., p. 129).

Like Pamela Myers, on April 28, 2000, Avon's nurse, Mary Anderson, R.N. sent Plaintiff a separate letter outlining Avon's policy on both Avon's Disability Plan and FMLA leave.  (See Pl. Depo., pp. 140-141, 288;  See also, Defendant's Exhibit 13, attached to Pl. Depo.).  Plaintiff also received this letter.  (See Pl. Depo., p. 140).  This letter included the following:

> I am writing to advise you of the procedures relative to your current absence.  Avon's Disability Plan is managed by Aetna Insurance Company.  If you are going to be absent from work more than 7 consecutive days, you need to contact a representative of Aetna's Managed Disability Unit who will coordinate your claim and process any benefits due you as a result of your disability…
>
> This absence may qualify as Family Medical Leave.  Therefore, during your leave the period beginning with your first day of absence will count towards your 12-week annual entitlement under FMLA pending receipt and approval of the enclosed forms. You need to complete the enclosed FMLA Request Form and have your physician complete the Certification Form.  Both forms are to be **returned to me within fifteen (15) days from the date of this letter.**  Forms may be faxed directly to me at (513) 551-2141. Upon receipt of these forms, you will be notified if your FMLA has been approved.
>
> \*       \*       \*

> Aetna Disability Management will advise you in writing
> of the date you are scheduled to return to work.  If for any
> reason you are unable to return to work on that date, it is
> your responsibility to call Aetna and obtain certification for
> an extension.  You must also call your Supervisor/Advisor
> and let her/him know when you will be returning to work.

(See Defendant's Exhibit 13, attached to Pl. Depo.).  (Emphasis Added.).

As indicated above, this letter provided that Plaintiff's absence may qualify for FMLA, but she had to complete the FMLA forms and return them in 15 days.  (See Pl. Depo., pp. 140-141; See also, Defendant's Exhibit 13, attached to Pl. Depo.).  At that time, Plaintiff understood that Avon's disability policy and FMLA leave policy were two separate programs.  (See Pl. Depo., pp. 140, 289).   Moreover, Plaintiff understood that she had an obligation to get the FMLA form and her doctor's certification directly to Avon.  (See Pl. Depo., pp. 129, 289).  Ms. Anderson wrote in the margin of her April 28 letter to Plaintiff that she had already faxed the certification forms directly to Dr. Leipzig's office.  (See Pl. Depo., p. 140; See also, Defendant's Exhibit 13, attached to Pl. Depo.).

Dr. Leipzig's office completed the Medical Certification form and faxed it back to Avon. (See Pl. Depo., p. 69; See also, Defendant's Exhibit 5, attached to Pl. Depo.).  Plaintiff's request for FMLA leave and Dr. Leipzig's medical certification was reviewed by Marlene Wasson (formerly known as Marlene Mullins) a Supervisor in Avon's Human Resources Department.  Ms. Wasson has been with Avon for over 32 years.  (See Deposition of Marlene Wasson ("Wasson Depo., p.____"), p. 7.  In that capacity, Ms. Wasson handles, and reviews hundreds of FMLA Leave applications a year.  (See Wasson Depo., p. 17).  Ms. Wasson is very familiar with FMLA requirements and Avon's procedure for reviewing FMLA Leave applications.  (See Wasson Depo., p. 17).

The medical certification form describes what is meant as a "serious health condition" under the FMLA and, further, directs that the health care provider indicate if the patient's condition qualifies under any of the categories described. (<u>See</u> Pl. Depo., p. 70; <u>See</u> <u>also</u>, Defendant's Exhibit 5, attached to Pl. Depo.). Moreover, the certification form directs the health care provider to indicate the probable duration of the condition. (<u>See</u> Pl. Depo., p. 70; <u>See</u> <u>also</u>, Defendant's Exhibit 5, attached to Pl. Depo.).

Dr. Leipzig's certification was blank in several places and totally failed to indicate if Plaintiff's condition qualified under any of the categories described. (<u>See</u> Pl. Depo., p. 70; <u>See</u> <u>also</u>, Defendant's Exhibit 5, attached to Pl. Depo.). Dr. Leipzig's certification further failed to indicate the probable duration of Plaintiff's condition and Dr. Leipzig never provided Plaintiff with any documentation indicating that Plaintiff needed to be off work for a specific period of time. (<u>See</u> Pl. Depo., pp. 70-74; <u>See</u> <u>also</u>, Defendant's Exhibit 5, attached to Pl. Depo.).

Based on her experience, Ms. Wasson determined after reviewing Plaintiff's Request Form and Dr. Leipzig's medical certification that there was insufficient information upon which to base a determination if FMLA leave was warranted. (<u>See</u> Wasson Depo., pp. 24-25). As a result, Ms. Wasson checked the box "disapproved" at the bottom of Plaintiff's Request Form and sent Plaintiff notification that her FMLA leave had not been approved. (<u>See</u> Wasson Depo., p. 32; <u>See</u> <u>also</u> Defendant's Exhibit 5, attached to Plaintiff Depo.).

After Plaintiff's visit with Dr. Leipzig, Plaintiff returned to Dr. Hunter's office for follow-up. (<u>See</u> Pl. Depo., p. 86). Plaintiff claims that Dr. Hunter told her that she needed to stay out of work until June 13, 2000. (<u>See</u> Pl. Depo., pp. 86-87). Although Plaintiff blindly claims that she told Dr. Hunter to provide Avon with documentation of her time off, Plaintiff has no knowledge, and there is no evidence that Dr. Hunter provided any FMLA forms to Avon indicating Plaintiff

needed to be off work.  (<u>See</u> Pl. Depo., pp. 144, 148-49, 164).

### 2.  <u>Aetna Managed Disability Procedure Through Avon</u>

As previously outlined above, at the time of Plaintiff's hire as a full time employee she received documents regarding Avon's policies and procedures.  (<u>See</u> Pl. Depo., pp. 48, 54).  Avon included its Disability Leave of Absence Policy in those documents.  (<u>See</u> Pl. Depo., p. 48).  Moreover, in the correspondence sent by Pam Myers on April 28, 2000, Ms. Myers indicated that Avon placed Plaintiff on Medical Leave of Absence pending certification from Aetna Insurance Company.  (<u>See</u> Pl. Depo., pp. 127-128;  <u>See also</u>, Defendant's Exhibit 12, attached to Pl. Depo.).

At that time, Ms. Myers further informed Plaintiff that Aetna Insurance Company coordinated all Avon associates' medical leaves of absence and managed Avon's Disability Plan.  (<u>See</u> Defendant's Exhibit 12, attached to Pl. Depo.).  Moreover, Ms. Myers indicated that Plaintiff should "call Aetna…and speak to a Case Manager so you can receive any benefits due as a result of your disability."  (<u>See also</u>, Defendant's Exhibit 12, attached to Pl. Depo.).  Plaintiff does not dispute that she received this letter.  (<u>See</u> Pl. Depo., p. 128).

Like Pamela Myers' April 28, 2000 letter, Mary Anderson, R.N.'s April 28, 2000 letter outlined Avon's policy on both Avon's Disability Plan and procedure for obtaining benefits under that Plan.  (<u>See</u> Pl. Depo., pp. 140-141;  <u>See also</u>, Defendant's Exhibit 13, attached to Pl. Depo.).  Moreover, Ms. Anderson's letter informed Plaintiff that "if you are going to be absent from work more than 7 consecutive days, you need to contact a representative of Aetna's Managed Disability Unit who will coordinate your claims and process any benefits due as a result of your disability… ."  (<u>See</u> Defendant's Exhibit 13, attached to Pl. Depo.).

Ms. Anderson informed Plaintiff that Avon's FMLA Leave and Aetna Disability Leave were two separate and distinct processes.  (<u>See</u> Mary Anderson Deposition ("Anderson Depo., p.____"),

p. 49). Plaintiff received Ms. Anderson's letter. (See Pl. Depo., p. 140).

Separate and apart from Avon's process for FMLA leave, Aetna has a process for certifying disability leaves for Avon associates. (See Wasson Depo., p. 36). Aetna obtains information from Avon associates' health care providers and this information is not shared with Avon. (See Anderson Depo., pp. 46, 51; See also, Wasson Depo., p. 54). Avon receives notification from Aetna when an Avon associate is certified for a disability leave. (See Anderson Depo., p. 51). Likewise, Avon is notified when Aetna's certification for an Avon associate's disability leave expires. (See Anderson Depo., p. 51).

Through its own process, Aetna certified Plaintiff for disability leave from April 11, 2000 through May 7, 2000 and notified Avon of this certification. (See Defendant's Exhibit 11, attached to Pl. Depo.). But at no time starting after May 8, 2000 did Plaintiff have any documentation extending her disability certification through Aetna. (See Pl. Depo., p. 263). In fact, as of May 10, 2000, both Plaintiff and Avon had notice by Aetna that Plaintiff's disability certification through Aetna expired on May 8, 2000. (Pl. Depo., pp. 121-122, 239; Defendant's Exhibits 11 and 20, attached to Pl. Depo.)

Upon learning that Plaintiff's certification from Aetna had expired, Avon expected Plaintiff to return to work. On approximately May 15, 2000, Pamela Myers spoke with Plaintiff and informed Plaintiff that she was only certified for time off through May 7, 2000 and that without medical certification extending her time off work she was absent without leave. (See Myers Aff., ¶¶6-7). At that time, Plaintiff told Ms. Myers that she did not have any documentation certifying her off beyond May 7th. (See Pl. Depo., pp. 120, 124; See also Myers Aff., ¶6). As such, after May 7, 2000, Plaintiff was well aware that she was neither on FMLA leave nor receiving Aetna disability benefits. (See Pl. Depo., p. 239).

Once again, in early May 2000, Plaintiff's supervisor, Brian Bilz called her and indicated that she was not on an approved leave and that she needed to provide documentation for that approval.  (See Pl. Depo., p. 219). Moreover, Plaintiff had at least one conversation with another Avon representative and, thus, Plaintiff understood that she was not on any approved leave.  (See Pl. Depo., p. 226).

In an attempt to resolve the issue of Plaintiff's absences, on June 2, 2000, Ms. Myers sent Plaintiff a certified letter indicating that Plaintiff's Medical Leave of Absence through Aetna was approved only through May 7, 2000.  (See Pl. Depo., pp. 152-153; See also, Defendant's Exhibit 14, attached to Pl. Depo.).   Ms. Myers further indicated:

> …Your [sic] have not contact me to communicate your need to be absent or to request time off as required by Avon policy.  Your failure to contact Avon is in violation of policy.  As a result, paperwork is being initiated to terminate your employment with Avon.
>
> If you have information that you think could affect this decision, please call me upon receipt of this certified letter.  In the event that Avon does not receive formal notification from you by June 9, 2000, we will consider the termination decision irrevocable.

(See Defendant's Exhibit 14, attached to Pl. Depo.).

Plaintiff now claims that she made at least two attempts to contact Ms. Myers by phone, but only spoke to Ms. Myers' assistant.  (See Pl. Depo., pp. 156-157).  Plaintiff decided to write Ms. Myers a letter on June 5, 2000, because Plaintiff could not get in touch with Ms. Myers by phone. (See Pl. Depo., pp. 156-157).  Plaintiff admits that this letter was not mailed until June 8, 2000. (See Pl. Depo., p. 160).  Moreover, as of this time, Plaintiff did not have any documentation from Dr. Hunter indicating that Plaintiff needed off work beyond May 7, 2000.  (See Pl. Depo., pp. 168, 256).

Plaintiff received a release to return to work from Dr. Hunter on June 12, 2000. (See Pl. Depo., p. 256). Dr. Hunter's release indicated that "Jessica has been under my care from 5-19 to present… ." (See Pl. Depo., p. 256; See also, Defendant's Exhibit 22, attached to Pl. Depo.). Plaintiff now claims that she ultimately mailed a copy of the release to return to Avon. (See Pl. Depo., p. 262). Avon never received this release from Dr. Hunter and was not aware it existed until long after the decision to terminate Plaintiff's employment had been made.[5] (See Pl. Depo., p. 116). Although Plaintiff attempts to claim that she was terminated because her Aetna certification was not extended, Avon terminated Plaintiff's employment due to poor attendance and job abandonment. (See Pl. Depo., pp. 104, 286; See also, Defendant's Exhibit 14, attached to Pl. Depo.).

### 3.    Plaintiff's Mitigation Efforts

Although Plaintiff was enrolled at Xavier University while she worked at Avon, upon her termination, Plaintiff worked for BW-3 as a cashier for approximately three months. (See Pl. Depo., p. 28). Because Plaintiff's friends were the owners of the BW-3, Plaintiff did not want to continue working in that position. (See Pl. Depo., p. 29). Plaintiff next worked for two driving schools, AAAA International and Drive-Rite from approximately February 2001 through January 2002. (Pl. Depo., p. 30).

Thereafter, Plaintiff decided to take a non-paid position working for Carbazaar, Inc. ("Carbazaar"). (See Pl. Depo., pp. 25-26). While receiving no cash compensation, Plaintiff voluntarily worked in this non-paid position for approximately a year-and-a-half. (See Pl. Depo., pp. 27, 32). Plaintiff claims that she continued to seek employment while working for Carbazaar. (See Pl. Depo., p. 27). While Plaintiff volunteered at Carbazaar, there were several job

---

[5]    Plaintiff appealed the denial of her certification through Aetna's appeal process. During that appeals process and in preparation for Plaintiff's unemployment hearing, Avon obtained some additional information from Aetna, none of which was within Avon's possession at the time it made its decision to terminate Plaintiff's employment in June 2000 for job abandonment. (See Wasson Depo., pp. 52-53).

opportunities available.  (<u>See</u> Pl. Depo., p. 28; <u>See also</u>, Exhibit 1, attached to Pl. Depo.).  Plaintiff claims that she interviewed at several of these potential jobs, but never received any offers for employment.  (<u>See</u> Pl. Depo., pp. 32-37).  Indeed, Plaintiff interviewed for a customer service position at Federal Express, but was late and she believes that is why Federal Express did not make an offer to her.  (<u>See</u> Pl. Depo., p. 34).

Moreover, Plaintiff now claims that there was a period of time after her separation from Avon that she was incapable of full-time work.  (<u>See</u> Pl. Depo., p. 38).  During that time, Plaintiff worked part-time for BW-3 and she did not request time off from work because she was on a flexible schedule.  (<u>See</u> Pl. Depo., p. 39).  Plaintiff continued to work immediately after her termination from Avon, but ultimately quit in order to take the non-paid position with Carbazaar.  (<u>See</u> Pl. Depo., pp. 30-39).

### III.    <u>LAW AND ANALYSIS</u>

### A.    <u>SUMMARY JUDGMENT STANDARD</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Summary judgment is appropriate where the opposing party fails to present sufficient evidence on an issue upon which that party has the burden of proof.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  To survive summary judgment, Plaintiff "must set forth <u>specific facts</u> showing that there is a genuine issue for trial."  <u>Davis v. Robbs</u>, 794 F.2d 1129, 1130 (6th Cir.), <u>cert</u>. <u>denied</u>, 479 U.S. 992 (1986) (emphasis in original).  Moreover, Rule 56(e) states that a party may not rest on the allegations contained in his pleadings to overcome a properly supported motion for summary judgment.  <u>See</u> <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968), <u>reh'g</u> <u>denied</u>, 393 U.S. 901 (1968).

Applying these standards, Avon is entitled to judgment as a matter of law on Plaintiff's entire Complaint.

**B.      AVON IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM THAT AVON WRONGFULLY DISAPPROVED PLAINTIFF'S FMLA LEAVE.**

Avon is entitled to summary judgment on Plaintiff's claim that Avon wrongfully disapproved Plaintiff's FMLA leave because Plaintiff can provide no evidence that she provided a timely and complete medical certification.  It is unlawful for any employer to deny the exercise of, or attempt to exercise any right provided under the FMLA.  29 U.S.C. § 2615(A)(1).  Eligible employees are entitled to twelve work weeks of leave within any twelve-moth period because of a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  Employers, before granting such leave, may require the request for leave to be supported by medical certification from the employee's health care provider.  29 U.S.C. § 2613.  If the employee cannot provide such certification before leave is taken, the employee must provide the certification within the time frame requested by the employer, but the employer must give the employee at least fifteen days from the time the employer requests the certification.  29 C.F.R. § 825.305.  "The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency."  29 C.F.R. § 825.305(b).  No specific form of notification to the employee is provided by statute.  The FMLA provides in pertinent part:

> A certification is considered sufficient if it contains: (1) the date on which the serious health condition began; (2) the probable duration of the condition; (3) the medical facts within the knowledge of the health care provider regarding the condition; **and** (4) if the leave is for the purpose of caring for a family member, an estimate of the amount of time that the employee will be needed to care for the family member.

29 U.S.C. §2613(b); Shtab v. Greate Bay Hotel and Casino, Inc., 173 F. Supp. 2d 255, (D.N.J. 2001).

In Robinson v. Franklin County Board of Commissioners, 2002 U.S. Dist. LEXIS 25681,

the plaintiff alleged that his former employer wrongfully denied his FMLA leave request. The plaintiff further alleged that his former employer did not comply with the FMLA's medical certification requirements. Id. The defendant employer countered that its denial of the FMLA request was justified on the basis that plaintiff failed to provide proper medical certification to support his absences. Id. at *29.

The district court examined the plaintiff's claim that his former employer wrongfully denied his request for FMLA leave. The district court held that the employer did not infringe upon the plaintiff's rights. Id. The court concluded that the employer provided the plaintiff with a letter stating that he was required to get medical certification, that he had fifteen days to do so, and attached the certification form to the letter. The court further concluded that the employer complied with the requirements of the FMLA, and, thus, could not be deemed to have violated the plaintiff's rights for denying FMLA leave based on Plaintiff's failure to return the certification. Id. at *30-*31.

Here, like the FMLA requires and Robinson, Avon required Plaintiff to provide medical certification from Plaintiff's health care provider. (See Defendant's Exhibit 13, attached to Pl. Depo.). Avon further gave Plaintiff more than fifteen days, i.e., over thirty (30) days, from the time Avon requested the certification. Plaintiff provided an incomplete medical certification that failed to provide information regarding Plaintiff's serious health condition, most importantly, the probable duration of her condition. Therefore, Avon advised Plaintiff that her medical certification was incomplete and provided Plaintiff a reasonable opportunity to cure the deficiency. (See Defendant's Exhibit 14, attached to Pl. Depo.).

Plaintiff attempts to claim that Avon did not give her a reasonable opportunity to cure the inadequate medical certification. The FMLA does not specifically explain what constitutes a

reasonable opportunity allowing Plaintiff to cure her medical certification's deficiency. Based upon 29 C.F.R. § 825.305(b), which provides that an employer must afford an employee 15 days to provide a medical certification, courts generally construe 15 days as a reasonable time allowance. See, e.g. Dillon v. Carlton, 977 F. Supp. 1155 (W.D. Fla. 1997); Legrand v. Village of McCook, 1998 U.S. Dist. LEXIS 5230, *16 (N.D.Ill. 1998); Geen v. Labor & Indus. Review Comm'n, 654 N.W.2d 1, 9 (Ct. App. Wisc.) ("although it is true that neither the FMLA nor the regulations define what constitutes a reasonable opportunity to cure, it seems unlikely that the Department of Labor intended that an employee's opportunity to cure an inadequate certification should expire before the end of the mandatory fifteen-day period for submitting a certification in the first instance."). Even if an employer gave its employee a shorter time than 15 days, however, it is not automatically considered as unreasonable. Cavin v. Honda of Am. Mfg., 2002 U.S. Dist. LEXIS 19601, *72 (S.D. Ohio 2002), reversed on other grounds, 2003 U.S. App. LEXIS 20722 (6th Cir. 2003).

In Cavin, an employee who was allowed only two days to cure his inadequate medical certification alleged that the employer did not provide a reasonable opportunity to cure the deficiency. However, the court held that the employer complied with the FMLA requirement because the employee failed to show that it was either impossible or impractical to complete the medical certification in two days:

> FMLA regulations do not define what constitutes a "reasonable opportunity." This must be determined on a case by case basis. The regulations do contemplate that, in some instances, through no fault of their own, employees may be unable to comply with the medical certification deadlines set by the employer "unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." Likewise, 29 C.F.R. 825.311(b) states the employees must provide certification within the time frame requested by the employer or as soon as reasonably possible under the particular facts and circumstances.

Id. at *73, 74 (Emphasis Added). Therefore, while 15 days is generally considered a reasonable time allowance, a shorter period would not be deemed as unreasonable unless the employee can

prove it was impracticable or impossible to cure the deficiency of her medical certification.  Id.

After given a reasonable opportunity to cure any deficiency of her medical certification, it is the employee's responsibility to make sure that the complete certification is submitted in time.  See Stoops v. One Call Communications, Inc., 141 F.3d 309, 313, 314 (7th Cir. 1998); Cavin v. Honda of Am. Mfg., 2002 U.S. Dist. LEXIS 19601, *72, *78 (S.D. Ohio 2002).  In Stoops, the court stated that the employee is the person most able to determine that the initial certification was "wrong" and was also the person with the incentive, certainly the burden, to have it corrected.  Id. at 313.  Similarly, in Cavin, the court held that the employer was justified in denying the employee's requested FMLA leave and subsequently terminating him because the employee failed to cure the deficiency in his medical certification in a timely manner.

Just as in Stoops and Cavin, in the present case, Avon notified Plaintiff that her medical certification was inadequate and gave her over thirty (30) days to provide an adequate medical certification.  Surely, thirty days is a reasonable opportunity to cure the deficiency and provide an adequate medical certification and, therefore, it was Plaintiff's responsibility to make sure that the complete certification was submitted in time.  Plaintiff did not do so.

Like Stoops, Plaintiff is, and was, the person most able to determine that the initial certification was "wrong" and was also the person with the incentive and the burden, to have it corrected. Moreover, like in Cavin, this court should hold that Avon was justified in disapproving Plaintiff's requested FMLA leave and subsequently terminating her because of her: (a) unreported absences (b) failure to cure the deficiencies in her medical certification and (c) job abandonment.

This Court should further find that Avon provided a reasonable opportunity for Plaintiff to complete her medical certification, i.e., over thirty (30) days.  Plaintiff admitted in her deposition she was aware as early as April 29, 2000 that her FMLA leave was denied.  (See Pl. Depo., pp. 130-

131). Plaintiff admits that she made no attempt to ascertain why the leave was denied or what was needed for her to do to cure any deficiency with her leave request. (See Pl. Depo., p. 131). Moreover, Plaintiff admitted that her supervisor, Mr. Bilz, contacted her in early May 2000 and informed her that she needed to provide documentation for approval of her leave. (See Pl. Depo., p. 219). Rather, Plaintiff decided to wait until she returned to work and deal with it then. (See Pl. Depo., p. 132).

Moreover, even with over thirty (30) days and without showing any impossibility or impracticability, this Court should hold Plaintiff simply failed to submit a complete medical certification in a timely manner. Therefore, Avon complied with the FMLA's requirement to give Plaintiff a reasonable opportunity to cure the deficiency of her medical certification and Avon did not wrongfully disapprove Plaintiff's FMLA leave request. As such, Avon is entitled to summary judgment on Plaintiff's FMLA claim as a matter of law.

## C.    AVON IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM THAT AVON RETALIATED AGAINST PLAINTIFF FOR INVOKING HER RIGHTS UNDER THE FMLA.

Avon is entitled to summary judgment on Plaintiff's claim that Avon retaliated against Plaintiff for invoking her rights under the FMLA because Plaintiff cannot establish a prima facie case of retaliation and because Avon has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

### 1.    Legal Standard

The Sixth Circuit has adopted a three-step framework for courts to use in analyzing retaliation claims under the FMLA. See E.E.O.C. v. Avery-Dennison Corp., 104 F.3d 858 (6th Cir. 1997) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973))

Under this three-step framework, the initial burden of establishing a prima facie case of retaliation lies with Plaintiff. See Avery-Dennison Corp, 104 F.3d at 860. If Plaintiff is able to

satisfy her burden of establishing a <u>prima</u> <u>facie</u> case, the burden of production shifts to Avon to articulate a legitimate, nondiscriminatory reason for the adverse employment action. <u>Id.</u> Despite this shift in the burden of production, however, the burden of persuasion remains with Plaintiff throughout. <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993).

Once Avon articulates a legitimate, nondiscriminatory reason for the adverse employment action, the inference of discrimination created by the <u>prima</u> <u>facie</u> case is destroyed. <u>See id.</u> Plaintiff must then prove, by a preponderance of the evidence, that Avon's proffered reason was pretextual. <u>See</u> <u>Avery-Dennison Corp</u>, 104 F.3d at 862. To establish pretext, Plaintiff must show "either directly or indirectly that Avon's proffered explanation is unworthy of credence." <u>McDonnell</u> <u>Douglas</u>, 411 U.S. 792 (1973).

Applying these standards, Avon is entitled to summary judgment because (1) Plaintiff is unable to satisfy her <u>prima</u> <u>facie</u> case with regard to her retaliation claim; (2) Avon had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment; and (3) Plaintiff cannot present sufficient evidence of pretext to rebut this reason.

### 2. Plaintiff Cannot Establish A Prima Facie Case Of Retaliation Under The FMLA.

To prove a <u>prima</u> <u>facie</u> case of retaliation by Avon, Plaintiff must prove, by a preponderance of the evidence, that: (1) she engaged in protected activity; (2) the activity was known to Avon; (3) she was subjected to an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse action. <u>E.E.O.C. v. Avery-Dennison Corp.</u>, 104 F.3d 858 (6th Cir. 1997). Here, Plaintiff cannot prove her <u>prima</u> <u>facie</u> case because she cannot prove that Avon's termination decision was causally related to her having requested FMLA leave in April 2000. In order for Plaintiff to establish that Avon's termination decision was causally related to her having requested FMLA leave in April 2000, Plaintiff must show that Avon would not have terminated her

employment "but for" Plaintiff's request for FMLA leave.  <u>Agee v. Northwest Airlines, Inc.</u>, 151 F.

Supp. 2d 890 (E.D. Mich. 2001).

Plaintiff simply cannot make this showing.  Indeed, Plaintiff fully admits that she does not

know why Avon made the termination decision.  (<u>See</u> Pl. Dep., p. 276).  In fact, Plaintiff had just

recently requested FMLA leave in March 2000.  (<u>See</u> Pl. Depo., p. 107).  Plaintiff attempts to prove

a  <u>prima</u> <u>facie</u> case of retaliation by obtaining a medical certification from her health care provider

after Avon made its termination decision.  (<u>See</u> Pl. Depo., p. 49).  In <u>Robinson v. Franklin County</u>

<u>Board of Commissioners</u>, 2002 U.S. Dist. LEXIS 25681 (S.D. Ohio), the Court dealt with a similar

issue when the plaintiff filed a retaliation claim against his former employer for taking leave under

FMLA.  The district court examined whether the plaintiff could establish a <u>prima</u> <u>facie</u> case of

retaliation.  <u>See</u> <u>id.</u> at *31.  In arguing that the employer retaliated against him for requesting leave

under FMLA, the plaintiff alleged that he engaged in protected activity and he suffered an adverse

employment action.  <u>Id.</u> at *31.

The district court held that plaintiff had presented no evidence demonstrating that either the

employer's suspension or its denial of sick leave was causally related to the plaintiff's having taken

FMLA leave.  <u>Id.</u> at *31-32.  The district court further held that plaintiff presented no evidence that

would support a finding that, "when plaintiff provided his employer with the proper medical

certification for his absences, the employer had an inclination to either deny the FMLA leave or

later retaliate against plaintiff for it."  <u>Id.</u> at *31-32.    As such, the district court concluded that the

plaintiff could not prove a <u>prima</u> <u>facie</u> case of discrimination and, thus, the court granted summary

judgment in favor of the defendant employer.  <u>Id.</u> at *32.

Much like the plaintiff in the above-cited case, Plaintiff in the instant case cannot show that

Avon retaliated against her for requesting leave under the FMLA.  Plaintiff has provided no

evidence that Avon's termination of her employment was causally related to Plaintiff's having requested FMLA leave.  In fact, Plaintiff testified that Avon "was perhaps setting her up."  (See Pl. Depo., p. 158).  Moreover, Plaintiff has presented no evidence that would support a finding that because she failed to provide proper medical certification for her absences prior to her termination, Avon had an inclination to either deny her FMLA leave or later retaliate against her for it.  As such, like Robinson, this Court should conclude that Plaintiff has not proven a prima facie case of retaliation and, thus, this Court should grant Avon summary judgment as a matter of law.

### 3.    Avon Had A Legitimate, Nondiscriminatory Reason For Terminating Plaintiff's Employment.

Even if Plaintiff could establish a prima facie case of retaliation, which she clearly cannot, Avon is still entitled to summary judgment because Avon has provided a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); See also, Avery-Dennison Corp, 104 F.3d at 862; See also, Richardson v. CVS Corporation, 207 F. Supp. 2d 733 (E.D. Tenn. 2001).  In Richardson, the plaintiff presented undisputed proof that she contacted her supervisor to promptly inform him that she was still medically unable to return to work.  Moreover, only six or nine days later after speaking with her supervisor, the plaintiff provided medical documentation supporting her need for increased leave.

The district court held that the plaintiff had, in fact, presented sufficient proof to raise a genuine issue with respect to the issue of pretext.  Unlike Richardson, here, Plaintiff did not contact her supervisor; but, instead Mr. Bilz counseled Plaintiff indicating that her absences were unsupported.  Specifically, Mr. Bilz counseled Plaintiff in early May 2000 indicating that her absences were not documented and that she needed to provide documentation for time off after May 7, 2000.  (See Pl. Depo., p. 219).  Plaintiff failed to do so.

Indeed, as more fully explained above, it is undisputed that Plaintiff had a history of absenteeism, severe enough that Avon counseled Plaintiff several times regarding her poor attendance.  (See Pl. Depo., p. 198).  Plaintiff's supervisor in May 1998, Ms. Bonadio, placed a Memorandum in Plaintiff's personnel file indicating that Plaintiff had accumulated 85 hours of absence since the inception of her employment.  (See Defendant's Exhibit 19, attached to Pl. Depo.).  Ms. Bonadio warned Plaintiff that "[i]f these absences continue to occur, Jessica's employment with Avon could be at risk."  (See Defendant's Exhibit 19, attached to Pl. Depo.).  Once again, in August 1999, Avon placed Plaintiff on restriction for a period of time and counseled her regarding her poor attendance.  (See Pl. Depo., p. 214).

Moreover, on February 15, 2000, Plaintiff's supervisor, Mr. Bilz, met with Plaintiff to discuss Plaintiff's poor attendance.  (See Defendant's Exhibit 10, attached to Pl. Depo.).  Mr. Bilz warned Plaintiff that she needed to show immediate and sustained improvement or further disciplinary action would be taken, up to and including termination.  (See Pl. Depo., p. 112; See also, Defendant's Exhibit 10, attached to Pl. Depo.).  Plaintiff never provided the required medical certification and, thus, her unsupported absences violated Avon's Attendance Policy.  Clearly, this reason, together with Plaintiff's poor attendance record as articulated, is a legitimate, nondiscriminatory reason for Avon to terminate Plaintiff.

> **4.** **Plaintiff Cannot Show That Avon's Legitimate, Nondiscriminatory Reason For Terminating Plaintiff's Employment Is A Mere Pretext For Retaliation.**

In order to survive a motion for summary judgment, Plaintiff must set forth legally sufficient evidence that the legitimate, nondiscriminatory reason set forth above is a pretext for retaliation.  Burdine, 450 U.S. at 252-53; Avery-Dennison, 104 F.3d at 862.  Plaintiff has utterly failed to meet this burden.

Plaintiff readily admits that, at the time of Plaintiff's full time employment, she received all of Avon's guidelines and procedures, which included the Policy. (See Pl. Depo., p. 214). Plaintiff admits she understood that any attendance rate above 3.0 percent would be unacceptable. (See Pl. Depo., p. 214). Moreover, Plaintiff admits that Avon counseled her several times regarding her poor attendance. (See Pl. Depo., p. 198).

Even assuming that Plaintiff is correct, and her attendance was, in fact, satisfactory, Plaintiff's disagreement with Avon's honest business judgment regarding her poor attendance and abandonment of her position are insufficient to create sufficient evidence of pretext because a plaintiff "must do more than simply impugn the legitimacy of the asserted justification; in addition the plaintiff must also adduce evidence of the employer's discriminatory animus." Pierce v. Commonwealth Life Insurance Co., 40 F.3d 796, 804 (6th Cir. 1994); See also, Mitchell v. Toledo Hospital, 964 F.2d 577, 585 (6th Cir. 1992)(Courts repeatedly hold that the plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a discrimination claim to withstand a motion for summary judgment).

In the instant case, Avon likewise had an honest belief in its proffered reason for terminating Plaintiff's employment. Plaintiff's attendance record was well documented, as was Avon's attempt to help Plaintiff's attendance by counseling her on improvement and warning her of further disciplinary action, up to and including termination, if she did not show improvement. (See Pl. Depo., p. 112; See also, Defendant's Exhibit 10, attached to Pl. Depo.). Plaintiff's attendance simply continued to decline until Avon decided to terminate her employment due to job abandonment. (See Myers Aff., ¶10). Because Plaintiff cannot show a genuine issue of material fact as to whether Avon's proffered reason for her termination is pretextual, Plaintiff's claim fails as a matter of law and Avon is entitled to summary judgment on Plaintiff's retaliation claim. See

Avery-Dennison, 104 F.3d at 862.

Finally, it is well established in the Sixth Circuit and Ohio that courts cannot second-guess an employer's business judgment as it relates to the termination of employees. See Rush v. United Technologies, 930 F.2d 453, 458 (6th Cir. 1991) (holding that "[i]n discharge cases, unless a clear violation is shown, it is not appropriate for us to second guess the business judgment of employers in personnel matters."); Bush v. American Honda Motor Co., Inc., 227 F. Supp. 2d 780, 797 (S.D. Ohio 2002) (stating that "the Court is not here to second guess legitimate employment decisions made by employers" even if "the Court might have acted differently had it been the employer."); Olive v. Columbia/HCA Healthcare Corp., Nos. 75249 and 76349, 2000 Ohio App. LEXIS 914, at *14 (Cuyahoga Cty. Mar. 9, 2000) (attached hereto as Defendant's Exhibit 27) (holding that the courts "must avoid stepping into the role of super personnel manager and must not second guess legitimate business decisions.") (internal citations and quotations omitted).

In short, Plaintiff cannot prove a claim of retaliation because: (1) she cannot show a causal connection exists between her request for FMLA leave and Avon's termination decision;  and (2) she cannot provide any evidence that Avon's legitimate, nondiscriminatory reason for her termination is a mere pretext for discrimination.  As such, Avon is entitled to summary judgment on Plaintiff's retaliation claim as a matter of law.

**D.    EVEN IF THIS COURT DETERMINES THAT PLAINTIFF HAS MET HER BURDEN, WHICH AVON SPECIFICALLY DENIES, AVON IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS FAILED TO ADEQUATELY MITIGATE HER ALLEGED DAMAGES.**

Any employer who violates the FMLA shall be liable to any eligible employee for damages equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation. 29 U.S.C. § 2617.  Generally, the duty to mitigate damages after discrimination has occurred is statutorily imposed.  See, e.g., 42 U.S.C. § 2000e-

5(g)(stating in pertinent part; "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the backpay otherwise allowable.). Once Plaintiff establishes a prima facie case and presents evidence on the issue of damages, which Avon denies, the burden of producing sufficient evidence to establish Plaintiff's lack of diligence shifts to Avon. Taylor v. Invacare Corp, 2003 U.S. App. LEXIS 10318 (6th Cir. 2003); See also, Rasimas v. Michigan Dept. of Mental Health, 714 F.2d 614, 623 (6th Cir. 1983). Avon must show that substantially equivalent positions were available and Plaintiff failed to use reasonable diligence in seeking them out.    Id.

Here, there were substantially equivalent positions available, but Plaintiff failed to use reasonable diligence to seek these positions out. Specifically, testified that after her employment with Avon ended, she quit working at BW-3 because her friends were the owners and Plaintiff did not want to continue working in that position. Plaintiff further testified that she quit working in paid positions at both AAAA International and Drive-Rite in order to take a non-paid position working for Carbazaar. (See Pl. Depo., pp. 25-26). Moreover, Plaintiff testified that, while receiving no cash compensation, Plaintiff voluntarily worked in this non-paid position for approximately a year-and-a-half. (See Pl. Depo., pp. 27, 32).

Likewise, paying jobs were plentiful for individuals of Plaintiff's age, skill and experience. (See Defendant's Exhibit 1, attached to Pl. Depo.). Plaintiff simply lacked diligence to seek these positions out. Indeed, Plaintiff testified that she was late to an interview for at least one of these potential employers, Federal Express, and that was the reason that she did not receive an offer of employment. (See Pl. Depo., p. 34).

Therefore, Plaintiff has failed to adequately mitigate her alleged damages and Avon is entitled to summary judgment on Plaintiff's failure to mitigate as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, Avon respectfully requests that the Court grant Avon's Motion, dismiss Plaintiff's Complaint with prejudice, and enter judgment in Avon favor.

Respectfully submitted,

/s/ Jeffery L. VanWay
Ellen J. Garling (0043554)
BAKER & HOSTETLER, LLP
Capitol Square, Suite 2100
65 East State Street
Columbus, Ohio  43215
(614) 228-1541

and

Jeffery L. VanWay (0069175)
Bryant L. Brewer (0072152)
BAKER & HOSTETLER, LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio  45202
(513) 929-3400
(513) 929-0303 – Fax
email: jvanway@bakerlaw.com
Trial Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2003 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF participants and I hereby certify that I have mailed the foregoing by regular U.S. mail, postage prepaid on this 21st day of November, 2003, to Daniel A. Kruse, Attorney for Plaintiff, 1029 Main Street, Cincinnati, Ohio 45202.

/s/ Jeffery VanWay
Jeffery VanWay

G:\CIdata\blb5734\Avon 83523\Anderson\Pleadings\Motion for Summary Judgment.Avon.Anderson.reviseddoc.doc