LEXSEE 2000 OHIO APP. LEXIS 914

MARY ANN OLIVE, Plaintiff-appellee vs. COLUMBIA/HCA HEALTHCARE CORP., ET AL., Defendant-appellants

Nos. 75249 and 76349

COURT OF APPEALS OF OHIO, EIGHTH APPELLATE DISTRICT, CUYAHOGA COUNTY

2000 Ohio App. LEXIS 914

March 9, 2000, Date of Announcement of Decision

**PRIOR HISTORY:** [*1]

CHARACTER OF PROCEEDINGS: Civil appeal from Court of Common Pleas. Case No. CV-328657.

**DISPOSITION:**

VACATED; FINAL JUDGMENT FOR APPELLANTS.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant appealed the judgment of the Court of Common Pleas, Cuyahoga County (Ohio) denying its motions for direct verdicts, failing to grant a new trial, and awarding plaintiff damages in age discrimination and implied contract action against defendant, her employer.

**OVERVIEW:** Plaintiff presented no direct evidence of age discrimination against her. Plaintiff's attempt to show her termination resulted from her high salary failed, as a matter of law, to make any link between her age and the decision to terminate. No reasonable person could construe the supervisor's comment that plaintiff could not adapt to change as being indicative of discriminatory intent based on age. Plaintiff established a prima facie case of discrimination by showing that she was in a protected class, discharged, qualified, and replaced by someone younger. Defendant stated plaintiff's inability to communicate with her nurses was a non-discriminatory reason for plaintiff's discharge. The court held that even if defendant's reason for firing plaintiff was pretextual, it was not the product of age discrimination. The disciplinary policy was discretionary, not mandatory and there was no implied contract. Therefore, directed verdict or judgment notwithstanding the verdict should have been granted.

**OUTCOME:** Judgment vacated; plaintiff presented no direct evidence of age discrimination; although plaintiff presented prima facie discrimination case, defendant stated a non-discriminatory reason for discharge, and plaintiff could not show that the reason was pretextual and was product of age discrimination. Disciplinary policy was discretionary and there was no implied contract.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

*Labor & Employment Law > DiscriminationLabor & Employment Law > Discrimination > Age Discrimination > Coverage & DefinitionsConstitutional Law > Civil Rights Enforcement > Civil Rights Generally*
[HN1] Federal case law interpreting Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000*(e) et seq., is generally applicable to cases involving alleged violations of Ohio Rev. Code Ann. ch. 4112.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
[HN2] A person claiming discrimination can prove a case in one of two ways: with direct evidence or by establishing a prima facie case of discrimination.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*

DEFENDANT'S EXHIBIT 27

[HN3] Direct evidence of discrimination is found where an employer's policy is discriminatory on its face or where a statement by an employer directly shows there is a discriminatory motive. The party who shows direct evidence of discriminatory intent may forego reliance on the prima facie test.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
[HN4] The courts have developed a framework that permits a person claiming discrimination to show discrimination in the absence of direct evidence.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
[HN5] In order to establish a prima facie case of age discrimination, violative of former *Ohio Rev. Code Ann. § 4101.17*, in an employment discharge action, plaintiff-employee must demonstrate (1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class. Defendant-employer may then overcome the presumption inherent in the prima facie case by propounding a legitimate, nondiscriminatory reason for plaintiff's discharge. Finally, plaintiff must be allowed to show that the rationale set forth by defendant was only a pretext for unlawful discrimination.

*Civil Procedure > Appeals > ReviewabilityLabor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
[HN6] The Ohio appellate courts have consistently reviewed appeals from fully tried discrimination cases under the prima facie test.

*Civil Procedure > Trials > Judgment as Matter of LawCivil Procedure > Appeals > Standards of Review*
[HN7] The standards for determining a motion for a directed verdict or a judgment notwithstanding the verdict (JNOV) are the same. A motion for directed verdict or JNOV must be granted if the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party. Ohio R. Civ. P. 50(A)(4). The court does not engage in a weighing of the evidence or evaluate the credibility of the witnesses; rather, the issue is solely a question of law - did the plaintiff present sufficient material evidence at trial on a claim for relief to create a factual question for the jury?

*Civil Procedure > Trials > Judgment as Matter of LawCivil Procedure > Appeals > Standards of Review > De Novo Review*
[HN8] Appellate review of a motion for directed verdict or judgment notwithstanding the verdict is de novo.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
[HN9] A company's actions taken on behalf of its bottom line cannot form the basis of illegal discrimination absent a discriminatory intent. The courts understandably avoid becoming entangled in discussions about the wisdom of business decisions and do not require good business judgment on the part of business executives. Nor, for that matter, does the courts require business executives to exercise any particular moral or ethical judgment in how they structure their own pay. The courts must avoid stepping into the role of super personnel manager and must not second guess legitimate business decisions. No matter how distasteful certain employment decisions may appear to persons outside business management, absent a discriminatory intent, an employee will have no recourse under the discrimination laws.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
[HN10] A maxim like "you can't teach an old dog new tricks" is objectionable as a form of stereotyping; it treats all "old dogs" alike. To evaluate an individual worker or group of workers as lacking energy, initiative, commitment, imagination, flexibility, or other desired characteristics is not to indulge in age stereotypes, and is indeed the kind of evaluative approach that the antidiscrimination laws seek to encourage. The laws do not require the retention of dead wood.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
[HN11] An employer may make a subjective judgment to discharge an employee for any reason that is not discriminatory. That is especially true when a management level job is involved.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
[HN12] A discharged employee is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*

[HN13] Once the employer produces a nondiscriminatory reason for its action, the employer has rebutted the prima facie and there is no longer a legal presumption of unlawful discrimination.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
[HN14] The elements of the prima facie discrimination case remain and if they are accompanied by evidence of pretext and disbelief of the defendant's proffered explanation, they may permit the jury to find for the plaintiff. The evidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable inference of age discrimination.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
[HN15] A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason. Thus, in order to avoid a directed verdict, plaintiff needs to elucidate specific facts which would enable a jury to find the reason given by the employer was not only a sham, but a sham intended to cover up the employer's real motive: age discrimination. Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
[HN16] Pretext may be demonstrated by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for, its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions*
[HN17] Juries should not be permitted to return verdicts just because they disagree with an employer's business decisions or believe them to be harsh or unreasonable. The personnel decisions of the company may not be good ones, sometimes even harsh, but unless they violate some aspect of federal law, for instance, age, race, or gender discrimination, those business decisions are no business of the court.

*Labor & Employment Law > Employment Relationships > At-Will Employment*
[HN18] Ohio adheres to the general proposition that employment is terminable at will, by either party, at any time and for any cause. There is a limited exception to the at will employment rule that recognizes that at will employment may be modified by contract or promissory estoppel. Oral assurances may alter the terms of at-will employment. However, employee handbooks and personnel policies by themselves are merely unilateral statements of company policy and not terms of an employment agreement.

*Contracts Law > Types of Contracts > Implied-in-Law Contracts*
*Labor & Employment Law > Employment Relationships > At-Will Employment*
[HN19] Because employment is presumed to be at will, the party to an implied contract of employment has a heavy burden. He must prove the existence of each element necessary to the formation of a contract. Significantly, an employee must show a "meeting of the minds" of the parties that the employment was other than at-will.

*Labor & Employment Law > Employment Relationships > At-Will Employment*
[HN20] Without mutual assent, a handbook is merely a unilateral statement of rules and policies that creates no rights and obligations.

*Labor & Employment Law > Employment Relationships > At-Will Employment*
[HN21] Employers, notwithstanding promises or representations to the contrary, may reserve for themselves the right to change unilaterally their policies and procedures.

*Labor & Employment Law > Employment Relationships > At-Will Employment*
[HN22] Employers who provide guidelines in handbooks may issue disclaimers saying that nothing contained in the handbooks is intended to create a contract.

*Labor & Employment Law > Employment Relationships > At-Will Employment*
[HN23] If employers have the right to make gratuitous statements concerning employment policies, it logically follows that employees may not rely upon those statements as manifesting a mutual intent to be bound by the preexisting terms of those policies.

**COUNSEL:** For plaintiff-appellee: ELLEN S. SIMON, ESQ., CATHLEEN M. BOLEK, ESQ., CHRISTOPHER P. THORMAN, ESQ., Lancione & Simon, Cleveland, OH.

For defendant-appellants: ANDREW S. POLLIS, ESQ., KIM M. HASTINGS, ESQ., RICHARD T. PRASSE, ESQ., Hahn, Loeser & Parks, Cleveland, OH.

JUDGES: PRESIDING JUDGE JOHN T. PATTON, MICHAEL J. CORRIGAN, J., CONCURS. PATRICIA A. BLACKMON, J., DISSENTS. See Dissenting Opinion, Patricia A. Blackmon, J., attached hereto.

OPINIONBY: JOHN T. PATTON

OPINION:

JOURNAL ENTRY AND OPINION

JOHN T. PATTON, P.J.:

A jury awarded plaintiff Mary Ann Olive damages in this age discrimination and implied contract action against her employer, Columbia/HealthCare Corporation of Northern Ohio, the predecessor company to St. Vincent Charity Hospital (collectively referred to as the "hospital") where plaintiff worked as a head nurse before being terminated. In this appeal, the hospital claims the court erred by failing to direct verdicts, failing to grant a new trial, and by failing to correct numerous errors occurring at trial.

Our recitation of the [*2] facts is guided by the principle that we must review the evidence in the light most favorable to the party in favor of whom the jury returned verdicts. *Osler v. Lorain (1986), 28 Ohio St. 3d 345, 347, 504 N.E.2d 19.* Plaintiff, a registered nurse, began working at the not-for-profit hospital in 1973 (in 1995, the hospital ended its not-for-profit status when it merged with a large national health care organization). Over the years, she performed very competently and assumed positions with greater authority, eventually being named head nurse of the medical intensive care unit and the hemodialysis unit. These units were known in the hospital as "2-A." In addition to her duties as head nurse, she became the point person for the hospital's implementation of a computer program written to improve the efficiency of the intensive care unit. During her time with the hospital, her performance reviews were exemplary arid contained no written criticisms of her work, other than notations that she should strive to improve her interpersonal skills.

In January 1995, the hospital created a cardiac intervention unit by merging the coronary care unit and the medical step down units. [*3] Plaintiff assumed management of the combined units along with her previously assigned job of running 2-A. Many members of the staff had difficulty adapting to the merged, units, and the evidence fairly showed there were significant growing pains associated with the newly merged unit. Tensions ran high and tempers sometimes flared. There were criticisms by some doctors that nurses were not performing their tasks in a satisfactory manner. At least two doctors threatened to stop sending their patients to the cardiac intervention unit.

As the nurse in charge of the unit, plaintiff found herself at the center of the turmoil. Some nurses complained plaintiff had been irritable and unapproachable, and she did not welcome any input from her nurses. Some witnesses said plaintiff would have fits of anger where she threw papers and pens. One doctor said he heard plaintiff say, "fuck this unit * * * I can't stand this fucking job." By her own admission, plaintiff agreed the merger of the units did not go smoothly and she admitted her direct supervisor had told her she could be "unapproachable" during times of stress.

None of these shortcomings, however, were listed in plaintiff's performance [*4] reviews. Plaintiff's supervisor stated that she "counseled" plaintiff several times about her conduct toward the staff, but plaintiff did not recall any of this. It appears the "counseling" did not have an element of formality to it in the sense that it constituted direct disciplinary action.

In December 1996, plaintiff's supervisor made the decision to terminate plaintiff, citing plaintiff's continued inability to adapt to the changes in the merged units, manifested by her inability or refusal to communicate better with the nurses under her supervision. At the time of her termination, plaintiff was forty-nine years old.

Plaintiff filed this age and implied contract action against the hospital. She based her age discrimination claim on her perception that she had been terminated, along with three other hospital employees, because her length of tenure at the hospital made her the highest paid nurse. Plaintiff based her implied contract claim on a graduated discipline policy established by the hospital. The hospital admittedly did not follow the procedure in this case, but claimed plaintiff was a "director," a layer of upper management to whom the disciplinary procedures did not apply. [*5]

At trial, a jury returned verdicts for plaintiff on both the age discrimination and implied contract claim, and also awarded punitive damages. The court awarded attorneys fees and prejudgment interest.

I

The first and second assignments of error complain that the court erred by failing to grant a directed verdict on the age discrimination, punitive damages and implied contract claims, and likewise erred by failing to grant the hospital's motion for judgment notwithstanding the verdict on those same claims.

The Supreme Court has stated that "federal [HN1] case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) *et seq.*, Title 42, U.S.Code, is

generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm. (1991), 61 Ohio St. 3d 607, 609-610, 575 N.E.2d 1164*, quoting *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm. (1981), 66 Ohio St. 2d 192, 196, 421 N.E.2d 128*.

[HN2] A person claiming discrimination can prove a case in one of two ways: with direct evidence or by establishing a prima facie case of discrimination. "Direct [HN3] evidence is found, [*6] for instance, where an employer's policy is discriminatory on its face or where a statement by an employer directly shows there is a discriminatory motive." *Schlett v. Avco Fin. Servs., Inc. (N.D.Ohio 1996), 950 F. Supp. 823, 828*. The party who shows direct evidence of discriminatory intent may forego reliance on the prima facie test." *Mauzy v. Kelly Services, Inc. (1996), 75 Ohio St. 3d 578, 588, 664 N.E.2d 1272*. This kind of evidence is generally hard to come by, for it is the rare discriminator that leaves its tracks uncovered.

For this reason, [HN4] the courts have developed a framework that permits a person claiming discrimination to show discrimination in the absence of direct evidence. In *Barker v. Scovill, Inc. (1983), 6 Ohio St. 3d 146, 451 N.E.2d 807*, the court adopted the analytic framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817*, for use in Title VII cases, and modified the elements of a *prima facie* case to fit the contours of former *R.C. 4101.17*. The court held:

> [HN5] In order to establish [*7] a prima facie case of age discrimination, violative of *R.C. 4101.17*, in an employment discharge action, plaintiff-employee must demonstrate (1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class. Defendant-employer may then overcome the presumption inherent in the prima facie case by propounding a legitimate, nondiscriminatory reason for plaintiff's discharge. Finally, plaintiff must be allowed to show that the rationale set forth by defendant was only a pretext for unlawful discrimination.

Federal cases considering whether a court erred by failing to direct a verdict in discrimination cases, have consistently held that once a case is tried on the merits and resulted in a jury verdict, the reviewing court cannot reconsider whether a plaintiff made out a prima facie case, but instead must directly consider whether the plaintiff proved intentional discrimination. In *Gehring v. Case Corp. (C.A.7, 1994), 43 F.3d 340, 343*, the court stated: [*8]

> Once the judge finds that the plaintiff has made the minimum necessary demonstration (the "prima facie case") and that the defendant has produced an age-neutral explanation, the burden-shifting apparatus has served its purpose, and the only remaining question - the only question the jury need answer - is whether the plaintiff is a victim of intentional discrimination. (emphasis *sic*.)

Likewise, in *Skalka v. Fernald Environ. Restoration Mgmt. Corp. (C.A.6, 1999), 178 F.3d 414, 421*, the court stated, "after a jury verdict, the burden-shifting framework falls away. The question for the court is simply whether there was sufficient evidence to support a finding of age discrimination." (citation omitted). See, also, *Sanchez v. Mora-San Miguel Electric Co-op. Inc. (C.A.10, 1999), 1999 U.S. App. LEXIS 5887, *8, fn. 3, aff'd, 173 F.3d 864; Jiminez v. Mary Washington College (C.A.4, 1995), 57 F.3d 369, 377; Polacco v. Curators of Univ. of Mo. (C.A.8, 1994), 37 F.3d 366, 369-370; Hayman v. National Academy of Sciences (C.A.D.C., 1994), 306 U.S. App. D.C. 227, 23 F.3d 535, 537; Coffey v. Dobbs Intern. Services, Inc. (C.A.2, 1999), 170 F.3d 323, 326.* [*9]

It is an open question as to whether Ohio follows the federal approach. The Supreme Court had the opportunity to address this issue in *Byrnes v. LCI Communication Holdings Co. (1996), 77 Ohio St. 3d 125, 672 N.E.2d 145*, but failed to do so. In *Brynes*, an age discrimination plaintiff received a jury verdict and the issue on appeal was whether the trial court erred by failing to direct a verdict. In a split decision, a majority of four justices held that Brynes presented insufficient evidence of age discrimination because he failed to satisfy the fourth element of the *Barker v. Scovill, Inc.* test - that he had been replaced by a younger worker. One dissenting justice specifically pointed out that the plurality should not have reviewed the elements of a prima facie case on an appeal from a directed verdict, but should have focused solely on the question of discrimination *vel non*.

Despite the supreme court's approach in *Brynes*, two appellate courts have adopted the federal approach. See *Toole v. Cook, 1999 Ohio App. LEXIS 2040* (May 6, 1999), Franklin App. No. 98AP-486, unreported (citing dissenting justice in Brynes); *Yelton v. Stehlin, 1999 Ohio App. LEXIS 3832* (Aug. 20, 1999), Hamilton App.

No. [*10] C-980503, unreported (same). In this district, [HN6] we have consistently reviewed appeals from fully tried cases under the prima facie test. See, e.g., *Srail v. RJF Int'l Corp. (1998), 126 Ohio App. 3d 689, 711 N.E.2d 264; Gliner v. St.-Gobain/Norton Indus. Ceramics Corp., 1999 Ohio App. LEXIS 2611* (June 10, 1999), Cuyahoga App. No. 74055, unreported; *Madera v. Satellite Shelters, Inc., 1998 Ohio App. LEXIS 3726* (August 12, 1998), Cuyahoga App. No. 73172, unreported.

We adhere to our previous approach, one that remains consistent with *Brynes*, the latest pronouncement from the Supreme Court. Therefore, we will analyze this appeal under the prima facie case approach. n1 We note, however, that under either analysis, plaintiff's claims fail.

---

n1 We do not perceive our approach as being in conflict with the First and Tenth Appellate Districts - if anything, they arguably conflict with *Brynes*.

---

A

[HN7] The standards for determining a motion for a directed verdict or a judgment notwithstanding the verdict are the same. *Mantua Mfg. Co. v. Commerce Exchange Bank (1996), 75 Ohio St. 3d 1, 4, 661 N.E.2d 161.* [*11] A motion for directed verdict or JNOV must be granted if "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4); *Nickell v. Gonzalez (1985), 17 Ohio St. 3d 136, 137, 477 N.E.2d 1145.* The court does not engage in a weighing of the evidence or evaluate the credibility of the witnesses; rather, the issue is solely a question of law - did the plaintiff present sufficient material evidence at trial on a claim for relief to create a factual question for the jury? *Malone v. Courtyard By Marriott (1996), 74 Ohio St. 3d 440, 445, 659 N.E.2d 1242.* [HN8] Appellate review of a motion for directed verdict or JNOV is de novo. *Whitaker v. Kear (1997), 123 Ohio App. 3d 413, 422, 704 N.E.2d 317; Howell v. Dayton Power & Light Co. (1995), 102 Ohio App. 3d 6, 13, 656 N.E.2d 957.*

B

The hospital first claims that the court should have granted its motion for a directed verdict on the age discrimination claim because plaintiff [*12] failed to show direct evidence of discrimination and also failed to set forth a prima facie case of age discrimination.

1

Plaintiff presented no direct evidence, as that term would be construed in the classic sense, of age discrimination against her. There were no age-related statements directed to her; no specific corporate directives to terminate older workers. Instead, plaintiff's direct evidence of age discrimination took the form of *circumstantial* evidence, a method of proof apparently unique in this state because, unlike the federal courts, the Supreme Court has said that such circumstantial evidence is different from the kind that ordinarily makes up the prima facie case. See *Mauzy, 75 Ohio St. 3d 578, 664 N.E.2d 1272,* at paragraph one of the syllabus. The circumstantial, direct evidence of age discrimination was based on two points. First, plaintiff claimed the hospital's conversion into a for-profit entity placed a sudden emphasis on profit (with management having a vested interest in higher profits through year-end bonuses), and its own consulting firm pointed out that the hospital's high salaries were due to "long-tenured" employees. Second, plaintiff [*13] claimed her supervisor terminated her because plaintiff "could not adapt to change." Taking these two points together, plaintiff presented the case that the hospital had a profit motive to terminate highly paid, long-tenured employees (that is, older workers) and her supervisor's belief that plaintiff could not adapt to change suggested the termination was due to plaintiff's age, not her readiness to cooperate in restructuring the department.

These two points do not establish any direct evidence of discrimination. Plaintiff's arguments relating to cost-cutting are counter-intuitive because there is no correlation between the hospital's need to cut costs and age discrimination. Plaintiff's theory of age discrimination presupposed that only older employees had high salaries, so the decision to cut high salaries could only affect older workers. Yet the evidence showed that nurses like plaintiff were paid primarily according to their staff position, not length of service. There were other head nurses with fewer years of service who earned a salary roughly comparable to plaintiff's salary. The amount of plaintiff's salary did not have a direct correlation to her age.

In this context we [*14] must stress that even had plaintiff shown her termination resulted from her high salary, that fact alone would not show intentional age discrimination because it would be related to a profit motive, not intentional discrimination. [HN9] A company's actions taken on behalf of its bottom line cannot form the basis of illegal discrimination absent a discriminatory intent. The courts understandably avoid becoming entangled in discussions about the wisdom of business decisions and do not require good business judgment on the part of business executives. *Smith v.*

*Goodyear Tire & Rubber Co. (C.A.8. 1990), 895 F.2d 467, 472; Castleman v. Acme Boot Co. (C.A.7, 1992), 959 F.2d 1417, 1422; E.E.O.C. v. Clay Printing Co. (C.A.4, 1992), 955 F.2d 936, 946.* Nor, for that matter, does the courts require business executives to exercise any particular moral or ethical judgment in how they structure their own pay. The courts "must avoid stepping into the role of super personnel manager and must not second guess legitimate business decisions." *Brasic v. Heinemann's Inc. (C.A.7, 1997), 121 F.3d 281, 287* (citation omitted); *Elrod v. Sears, Roebuck & Co. (C.A.11, 1991), 939 F.2d 1466, 1470.* [*15] No matter how distasteful certain employment decisions may appear to persons outside business management, absent a discriminatory intent, an employee will have no recourse under the discrimination laws. See *Mauzy, 75 Ohio St. 3d at 583.* Plaintiff's attempt to show her termination resulted from her high salary failed, as a matter of law, to make any link between her age and the decision to terminate.

Plaintiff fares no better with her claim that the hospital's discriminatory intent could be shown by her supervisor's statements that plaintiff could not "adapt to change." These words not only have no apparent or hidden discriminatory animus, they subvert her argument because they show the same kind discriminatory stereotype that plaintiff claims has victimized her. In *Blackwell v. Cole Taylor Bank (C.A.7, 1998), 152 F.3d 666,* the Seventh Circuit Court of Appeals considered whether a manager's words that an employee within the protected class was not "flexible" or "energetic" were code words for "over forty." The court stated:

> * * * it would be a considerable insult to the tens of millions of workers in that age group to suppose that they are generally [*16] regarded as lacking in flexibility and energy. If "flexible" and "energetic" are to go the way of "fresh blood" and "you can't teach an old dog new tricks" as words or sayings purged from the lexicon of personnel management because deemed evidence of age discrimination, supervisors will be rendered speechless in evaluating their subordinates. [HN10] A maxim like "you can't teach an old dog new tricks" is objectionable as a form of stereotyping; it treats all "old dogs" alike. To evaluate an individual worker or group of workers as lacking energy, initiative, commitment, imagination, flexibility, or other desired characteristics is not to indulge in age stereotypes, and is indeed the kind of evaluative approach that the antidiscrimination laws seek to encourage.

> These laws do not require the retention of dead wood.

*Blackwell, 152 F.3d 666 at 671-672.* See, also, *Richter v. Hook-SupeRx, Inc. (C.A.7, 1998), 142 F.3d 1024, 1032* (holding that employer's statements that employee had a "low energy level" and was "resistant to change" did not raise an inference of age discrimination); *Hartsel v. Keys, (C.A.6, 1996), 87 F.3d 795, 802* (notion [*17] that older workers are more resistant to change is "the very type of ageist stereotype that the ADEA was enacted to address.")

No reasonable person could construe the supervisor's comment that plaintiff could not adapt to change as being indicative of discriminatory intent based on age. The words simply refer to the supervisor's opinion that plaintiff lacked the ability to cope on an interpersonal level with the changes effectuated by the merger. As in *Blackwell,* plaintiff's construction of her supervisor's words has the demeaning effect of implying that persons in the protected class are obstinate curmudgeons, incapable of adapting to any change. This characterization is nonsense, for the evidence fully showed that many nurses had difficulty adapting when the separate hospital units were merged - and most of those nurses were not in the protected class.

This is not a case where the employer directly tied discrimination to a class of older persons with the inability to change. See, e.g., *Beshears v. Asbill (C.A.8, 1991), 930 F.2d 1348, 1354* (finding age discrimination when executives who actively participated in the challenged employment decisions made several [*18] age-related comments such as, "older employees have problems adapting to changes and to new policies"). The supervisor's comments were directed solely to plaintiff and had no relation to age whatsoever, much less to the class of older persons. The comment that plaintiff could not "adapt to change" was not discriminatory.

Ultimately, the hospital made the decision that plaintiff was not the best person to oversee the staff during the merger of units. Plaintiff's position as a manager put her on the front line of the merger, so her ability to accept the change necessarily affected the functioning and morale of the units, and uncontradicted evidence showed that some members of the nursing staff were having difficulty approaching plaintiff. It may be that plaintiff was a superior head nurse who competently performed the many tasks required of her, but that performance alone does not ensure job security. "'An [HN11] employer may make a subjective judgment to discharge an employee for any reason that is not discriminatory.' This is especially true when, as in the present case, a management level job is involved." *Crabbs v. Copperweld Tubing Products Co. (C.A.6,*

*1997), 114 F.3d 85, 89*, [*19] quoting *Ackerman v. Diamond Shamrock Corp. (C.A.6, 1982), 670 F.2d 66, 70* (citations omitted).

Plaintiff also claimed that the consulting firm's report contained direct evidence of age animus against her. During trial, plaintiff told the jury that the report stated that the hospital had many long-tenured employees who were highly paid. Plaintiff then told the jury that the report specifically mentioned plaintiff, thus creating the inference that the report specifically mentioned her as one of the long-tenured employees with a high salary.

It is true that plaintiff was the highest paid head nurse at the hospital. But plaintiff's attempt to have the jury infer that the report's mention of plaintiff took the form of singling her out is a mischaracterization of the report. The only place where plaintiff's name appears in the report is in an organizational chart with the names of all department heads written long hand. The chart also names the head of every other unit within the hospital. The report does not contain any specific mention of plaintiff, so no reasonable trier of fact could find plaintiff had been singled out in the report.

Plaintiff's theory of discrimination [*20] presupposed that the report had some input into the hospital's decision to terminate plaintiff. It did not, because it could not. Plaintiff's Exhibit 1, a copy of the consulting report, is dated March 13, 1997. The hospital terminated plaintiff in December 1996, some three months before the consultant issued the report. The report had no evidentiary value whatsoever and the jury could not have given it any weight at all.

2

As for the prima facie case of age discrimination, the hospital does not dispute that plaintiff demonstrated the first two elements of the prima facie test - that she was in the protected class and that she was discharged. The hospital disputes the third and fourth elements - whether plaintiff was qualified for her position and whether she was replaced by another worker.

There is no question that plaintiff possessed the qualifications for the head nurse position. By its own admission, the hospital agreed that plaintiff performed many tasks capably, and its performance reviews over the years make no mention of any problems plaintiff had in performing her work.

The hospital argues plaintiff's poor "interpersonal skills" made her unqualified for the head nurse position. [*21] This argument misapprehends the nature of the third element of the prima facie test. That element exists to establish a person's abstract qualifications for a position; that is, education, experience or other quality that would, on paper, lead a reasonable employer to believe the person could adequately perform the job. There is no dispute plaintiff worked for many years as a head nurse. During that time, her qualifications to perform the job were never in question. Plaintiff's termination resulted from the hospital's frustrations with her ability to motivate her staff, into performing as a cohesive unit after the merger. This would be a dismissal based on performance grounds, not a dismissal based on her qualifications to perform the job. Plaintiff presented enough evidence of her qualifications for the head nurse position to avoid a directed verdict on that element.

This leaves the fourth element, whether the hospital replaced plaintiff with a younger worker. The hospital maintains the evidence failed to show that it replaced plaintiff with younger employees because plaintiff's duties were assigned to other existing employees performing related functions.

"A [HN12] discharged employee [*22] 'is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.'" *Vallejo-Serrano v. Cigna Ins. Co. (C.A.1, 1997), 114 F.3d 1170,* citing *LeBlanc v. Great American Ins. Co. (C.A.1, 1993), 6 F.3d 836, 846;* see, also, *Atkinson v. International Technegroup, Inc. (1995), 106 Ohio App. 3d 349, 359, 666 N.E.2d 257.* A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties. *Barnes v. GenCorp, Inc. (C.A.6, 1990), 896 F.2d 1457, 1465;* but see, *Cruz v. South Dayton Urological Assoc. (1997), 121 Ohio App. 3d 655, 661, 700 N.E.2d 675* ("In the context in which the *Barker* test is applied, 'replacement' is the substitution of an employee not belonging to the protected class for an employee who is a member of it. It does not require a 'new hire' to accomplish that substitution, which may as well occur when duties or responsibilities are transferred to another person already employed.").

We find the court did not err by failing [*23] to direct a verdict on the fourth element of the prima facie test because reasonable minds could find that plaintiff had been replaced by a younger person. The evidence showed that after plaintiff's termination, the hospital reassigned the head nurse of 3-A to take over plaintiff's duties on 2-A. Some seven months later, the hospital decided to merge 2-A and 3-A, and replaced plaintiff's replacement. The hospital then advertised for a head nurse to run 3-A. The nurse who replaced plaintiff was younger, although she had worked at the hospital for eighteen years. On these facts, reasonable minds could have found the hospital replaced plaintiff with a younger person; consequently, the fourth element of the prima facie case had been established.

With all four elements of the prima facie test established, it fell to the hospital to articulate a non-discriminatory reason for plaintiff's discharge. It did this by presenting evidence showing that plaintiff became testy following the consolidation of the CCU and 2-A, had numerous fits of pique, sometimes swore at her nurses and threw things. Two doctors testified that they complained about plaintiff's behavior, as well as the overall functioning [*24] of her units. One of the these doctors threatened to stop admitting patients to plaintiff's units. Lowered admissions would have meant lowered profitability for the hospital. Nurses testified that plaintiff's poor attitude created morale problems for the staff, and one witness testified to hearing plaintiff reprimand a nurse so harshly that she commented that she "wouldn't talk to a dog" that way.

We need not elaborate further on the evidence, for it abundantly showed a non-discriminatory reason for plaintiff's termination. [HN13] Once the employer produces a nondiscriminatory reason for its action, the employer has rebutted the prima facie and there is no longer a legal presumption of unlawful discrimination. In *Ryther v. KARE 11 (C.A.8, 1997), 108 F.3d 832, 837* (en banc), the Eighth Circuit stated:

> [HN14] The elements of the prima facie case remain, however, and if they are accompanied by evidence of pretext and disbelief of the defendant's proffered explanation, they may permit the jury to find for the plaintiff * * *. We emphasize that evidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable [*25] inference of age discrimination.

That being the case, it fell to plaintiff to rebut the hospital's reasons by showing the hospital's reasons for discharge were a pretext for discrimination. "A [HN15] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks (1993), 509 U.S. 502, 510-511, 125 L. Ed. 2d 407, 113 S. Ct. 2742; Richmond-Hopes v. City of Cleveland (C.A.6, 1998), 168 F.3d 490, 490.* Thus, in order to avoid a directed verdict, plaintiff needed to "elucidate specific facts which would enable a jury to find the reason given [by the hospital] was not only a sham, but a sham intended to cover up the employer's real motive: age discrimination." *Medina-Munoz v. R.J. Reynolds Tobacco Co. (C.A.1, 1990), 896 F.2d 5, 9* (citations omitted). "Mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co. (C.A.10, 1988), 853 F.2d 768, 772;* see, also, *DeNovellis v. Shalala (C.A.1, 1998), 135 F.3d 58, 65.* [*26]

Plaintiff tried to show the hospital's reasons for firing her were pretext by citing to her exemplary work record. She justifiably pointed to a long history of achievement with the hospital and argued that her alleged lack of interpersonal skills were trifling in comparison to her past performance. Assuming this to be true, it does nothing to advance the conclusion that plaintiff's termination was the product of age discrimination.

The Second Circuit Court of Appeals addressed a very similar issue in *Hollander v. American Cyanamid Co. (C.A.2, 1999), 172 F.3d 192.* Hollander had been terminated for "poor interpersonal skills" and challenged his termination as being the result of age discrimination. The court of appeals stated:

> First, assuming arguendo that Hollander's alleged interpersonal problems were used by Cyanamid as a pretext for the company's true reason for his termination, the pretext in and of itself does not suggest age discrimination. Had Cyanamid claimed that it terminated Hollander because of a characteristic stereotypically associated with age - for example, because he was "unable to keep up with the times" - and had Hollander shown that reason [*27] to be pretextual, our conclusion might be different. The perception that Hollander had interpersonal problems - noted almost from the outset of his re-employment by Cyanamid - does not reflect such stereotypical thinking.
>
> Second, nothing else in the record points to age discrimination as the real reason for Hollander's termination. As we noted in *Fisher III [ Fisher v. Vassar College (C.A.2, 1997), 114 F.3d 1332* (en banc)] an employer may give a false explanation for terminating an employee in order to mask the true reason which, though petty, spiteful or otherwise ignoble, is not unlawful. Hollander overlooks this statement of the law by contending that if Cyanamid's proffered reason is not to be believed, then the true reason for his termination must have been his age. However, Hollander put forth no proof of any age-related remarks or actions toward him by Cyanamid

personnel, and admitted that his age was never explicitly raised as a factor in his termination. If reliance on Hollander's alleged interpersonal problems was indeed a pretext--and we repeat that we are not so holding - the record before us shows that the stated reason may have been a pretext for various [*28] non-discriminatory reasons. This is not a case in which a finder of fact could reasonably conclude that Hollander's termination was, more probably than not, due to age discrimination because no other, non-discriminatory explanation was possible. The district court concluded that "of the many possible reasons for Cyanamid's inconsistencies, illegal discrimination is no more likely a reason than any other." *Hollander [v. American Cyanamid Co.* (D.Conn., 1998),] *999 F. Supp. 252 at 259.* We agree. Therefore, it was not error for the district court to hold that this evidence did not permit the inference that Cyanamid discriminated against Hollander because of his age. (footnotes omitted).

The court of appeals' sentiments in *Hollander* apply in this case - even if plaintiff could show that the hospital's justification for terminating her was pretext, plaintiff could not prevail on her age discrimination claim unless she presented evidence to show that the real reason for discharge had been age-related. This she did not do. The best she could muster was an oblique statement that she would not be able to adapt to change, but as we have said, that notion plays into the same [*29] ageist stereotype that she claims has victimized her.

This left plaintiff with odds and ends. In *Chavez v. Coors Brewing Co. (C.A.10, 1999), 176 F.3d 488, 488,* the court stated, "pretext [HN16] may be demonstrated by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for, its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" (citation and quotation omitted).

Plaintiff tried to show that the hospital treated other employees with interpersonal problems more favorably than her. The evidence showed that a younger head nurse ran a floor that had significant problems, but the hospital did not terminate her. While we accept this version of the facts as true for purposes of a directed verdict motion, the younger head nurse's difficulties did not rise to the same level as plaintiff's difficulties. The witnesses suggested that the hospital's nursing staff as a whole left something to be desired, and other testimony showed that it was difficult to please all of the doctors [*30] all of the time. Complaints about nursing care were not uncommon. Yet the hospital's reasons for terminating plaintiff went beyond mere difficulties with pleasing doctors and running an efficient floor - it went to plaintiff's ability to be an effective leader and motivator for her nurses. None of the other head nurses were said to have the same kind abrasive personality or temper. Moreover, plaintiff's defeatist attitude ("fuck this unit"), visible to her staff, could reasonably be construed by the hospital as a sort of cancer that could spread to the rest of the staff and create morale problems even more serious than those that existed after the units were merged.

It is true that many members of plaintiff's staff respected her both professionally and personally, and the record shows with some justification. Plaintiff worked many years at the hospital and performed without incident during those years. Her shock and anger over her termination are understandable. But [HN17] juries should not be permitted to return verdicts just because they disagree with an employer's business decisions or believe them to be harsh or unreasonable. "The personnel decisions of the company may not be good ones, [*31] sometimes even harsh, but unless they violate some aspect of federal law, for instance, age, race, or gender discrimination, those business decisions are no business of this court." *Murphy v. ITT Educational Services, Inc. (C.A.7, 1999), 176 F.3d 934, 938,* citing *Dale v. Chicago Tribune Co. (C.A.7, 1986), 797 F.2d 458, 464.*

Plaintiff bore the burden of showing that the hospital's decision to terminate was based directly on age discrimination. Having viewed the evidence in her favor, we see no evidence whatsoever to suggest that the hospital's decision to terminate her employment was based on her age. The court erred by refusing to direct a verdict or grant judgment notwithstanding the verdict. The first assignment of error is sustained. n2

> n2 Our disposition of this assignment necessarily vacates the award of punitive damages, and renders moot any discussion of the assigned errors relating to punitive damages. See App.R. 12(A)(1)(c).

II

Despite the error associated with [*32] the court's refusal to direct a verdict on the age discrimination claim, the jury also found that plaintiff had been discharged in violation of an implied contract of employment that provided for a series of disciplinary

steps before termination. The court told the jury that if it found for plaintiff on both the age discrimination and implied contract claims, it need only assess damages on the age discrimination claims, the thought being that damages for either claim (aside from the punitive damages associated with the discrimination claim) would be identical. Since the damages for implied contract damages exist independent from the damages for age discrimination, we must consider the hospital's argument that the court should have directed a verdict on the implied contract claims because the parties did not agree that the hospital's disciplinary procedure would become a part of an employment contract.

[HN18] Ohio adheres to the general proposition that employment is terminable at will, by either party, at any time and for any cause. *Helmick v. Educational Research Council of Am. (1976), 45 Ohio St. 2d 249, 255, 344 N.E.2d 118*. There is a limited exception to the at will employment [*33] rule that recognizes that at will employment may be modified by contract or promissory estoppel. See *Mers v. Dispatch Printing Co. (1985), 19 Ohio St. 3d 100, 103-104, 483 N.E.2d 150*. Oral assurances may alter the terms of at-will employment. *Id. at 105*. However, employee handbooks and personnel policies by themselves are merely unilateral statements of company policy and not terms of an employment agreement. *Gargasz v. Nordson Corp. (1991), 68 Ohio App. 3d 149, 155, 587 N.E.2d 475; Manofsky v. Goodyear Tire & Rubber Co. (1990), 69 Ohio App. 3d 663, 671, 591 N.E.2d 752*.

[HN19] Because employment is presumed to be at will, "the party to an implied contract of employment has a heavy burden. He must prove the existence of each element necessary to the formation of a contract." *Penwell v. Amherst Hosp. (1992), 84 Ohio App. 3d 16, 616 N.E.2d 254*. Significantly, an employee must show a "meeting of the minds" of the parties that the employment was other than at-will. *Schwartz v. Comcorp, Inc. (1993), 91 Ohio App. 3d 639, 633 N.E.2d 551*. [HN20] Without mutual assent, a handbook is merely a unilateral statement [*34] of rules and policies that creates no rights and obligations. *Tohline v. Central Trust Co., N.A. (1988), 48 Ohio App. 3d 280, 549 N.E.2d 1223*.

The court erred by refusing to direct a verdict on the implied contract claim because plaintiff failed to show the parties mutually assented to the implementation of disciplinary policy under the circumstances.

The disciplinary policy is discretionary, not mandatory. It provides progressive steps depending on the stage when corrective action is initiated, but also states that circumstances determined by the hospital may dictate just what level of corrective action may be taken. Despite the hospital's aspirational statement of policy that it would take corrective action in a uniform, consistent and non-discriminatory manner, the discipline policy makes clear that the hospital may determine the stage at which disciplinary action is initiated. If the hospital retained for itself the right to determine at what level disciplinary action would be initiated, plaintiff cannot show, as a matter of law, the kind of mutual assent necessary to establish the existence of a viable contract.

The language of the disciplinary policy likewise [*35] fails to show that the hospital intended that it be applied under all circumstances. For example, when addressing when "formal corrective action is appropriate," the policy sets forth "general guidelines" that "should" be considered by supervisory personnel. Because the disciplinary policy uses permissive, rather than mandatory words, the disciplinary policy can only be considered guidelines, not binding a contract. See, e.g., *Hill v. Christ Hosp., 131 Ohio App. 3d 660, 723 N.E.2d 581 (1998)* (disciplinary policy was not mandatory, as evidenced by the use of the word "should" instead of "shall" or "must"). The disciplinary policy also stated that "the Director - Human Resources is responsible for interpretation and application of this policy." We believe this statement suffices to demonstrate the hospital's intent not to be bound by the specific terms of the policy. See *Slavik v. Lincoln Electric Co., 1998 Ohio App. LEXIS 4798 (Oct. 8, 1998), Cuyahoga App. No. 73450*, unreported (discipline policy that gave employer discretion to impose punishment did not create implied contract of employment); *Meeks v. Abitibi-Price Corp., 1994 Ohio App. LEXIS 4901 (Nov. 4, 1994), Lucas App. No. L-94-053*, unreported (handbook replete [*36] with statements that retain employer authority and discretion using such words as "possible" and "might" insufficient to establish implied contract based on employer handbook).

Our conclusion is based on case law which establishes that [HN21] employers, notwithstanding promises or representations to the contrary, may reserve for themselves the right to change unilaterally their policies and procedures. See *Karnes v. Doctors Hosp. (1990), 51 Ohio St. 3d 139, 141, 555 N.E.2d 280*. Moreover, [HN22] employers who provide guidelines in handbooks may issue disclaimers saying that nothing contained in the handbooks is intended to create a contract. *Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St. 3d 108, 570 N.E.2d 1095*, paragraph one of the syllabus; *Uebelacker v. Cincom Systems, Inc. (1988), 48 Ohio App. 3d 268, 272, 549 N.E.2d 1210*. [HN23] If employers have the right to make gratuitous statements concerning employment policies, it logically follows that employees may not rely upon those statements as

manifesting a mutual intent to be bound by the preexisting terms of those policies.

Of course, the preceding discussion presupposes that the parties reached [*37] some form of mutual assent. The evidence at trial did not show that plaintiff carried her "heavy burden" of establishing mutual assent. Although plaintiff believed that the disciplinary policy applied to her, she admitted no one at the hospital told her that the disciplinary policy applied to her. It may be that plaintiff knew other employees were disciplined according to the policy (although plaintiff conceded that many nurses were members of a union and subject to a collective bargaining agreement with discipline guidelines), but reliance upon procedure meted out to other employees, by itself, would not suffice to overcome the specific language of the policy and demonstrate the existence of a contract between plaintiff and the hospital.

Accordingly, we find plaintiff failed to establish the elements of an implied contract claim and the court erred by failing to direct a verdict on that claim. Our holding necessarily vacates the award of prejudgment interest, and we specifically decline to consider the hospital's assignments of error relating to that issue. See App.R. 12(A)(2).

Judgment vacated; final judgment for appellants.

It is ordered that appellants recover of appellee their [*38] costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MICHAEL J. CORRIGAN, J., CONCURS.

PATRICIA A. BLACKMON, J., DISSENTS.
See Dissenting Opinion, Patricia A.
Blackmon, J., attached hereto.

PRESIDING JUDGE

JOHN T. PATTON

N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S. Ct. Prac. R. II, Section 2(A)(1).

DISSENTBY: PATRICIA ANN BLACKMON

DISSENT:

DISSENTING OPINION

DATE: MARCH 9, 2000

PATRICIA [*39] ANN BLACKMON, J., DISSENTS:

I respectfully dissent from the majority opinion. The majority opinion concluded that the trial court should have either directed a verdict for the defendant-appellants or granted a judgment notwithstanding the verdict. Because each raises a question of law, the movant must show, although the evidence rests most strongly in the nonmovant's favor, the nonmovant has failed to produce substantial, competent evidence to support its claim. In substance the movant must show that reasonable minds could not differ on the evidence, i.e., that no conflict or dispute exists for a jury to consider. See *Strother v. Hutchinson (1981), 67 Ohio St. 2d 282, 423 N.E.2d 467, 469. Ramage v. Cent. Ohio Emergency Serv., Inc. (1992), 64 Ohio St. 3d 97, 109, 592 N.E.2d 828, 837.*

Appellant did not raise the issue of whether the jury lost its way and that the greater amount of credible evidence weighed in its favor.

The Majority in vacating the jury's verdict concludes that appellee Mary Olive offered "no evidence whatsoever to suggest that the hospital's decision to terminate her employment was based on her age." However, the evidence shows that [*40] Olive's supervisor gave "inability to adapt to change" as a reason for firing her. I believe that the supervisor's comment constituted evidence that her termination was motivated by her age.

While it is true that ambiguous, isolated, or abstract comments have been held to be insufficient to support an inference of discrimination, it has also been held that age-related comments may indicate discrimination when they are specifically directed to the plaintiff. See *Byrnes v. LCI Communication Holdings Co. (1996), 77 Ohio St. 3d 125, 130, 672 N.E.2d 145, 149*, certiorari denied (1997), *521 U.S. 1104, 117 S. Ct. 2480, 138 L. Ed. 2d 989. Tessmer v. Nationwide Life Ins., 1999 Ohio App. LEXIS 4633* (Sept. 30, 1999), Franklin App. No. 98AP-1278, unreported; *Potocnik v. Sifco Industries, Inc.*

*(1995), 103 Ohio App. 3d 560, 660 N.E.2d 510, 516,* discretionary appeal not allowed (1995), *73 Ohio St. 3d 1453, 654 N.E.2d 988.*

In this case, Olive's supervisor, Donna Vale, met with the hospital's chief operating officer (Fran Hoerrmann) and the chief executive officer (Sam Turner) in the fall of 1996 in order to discuss Olive's termination. The group opined that several [*41] managers would not be able to adapt or to lead their employees through the changes that were necessary in the organization following the Columbia takeover. In addition to Olive, the group discussed two other managers, Gene Andrews and Rosemary Penzek, who had been at the hospital 27 and 23 years respectively. Olive, Andrews, and Penzek were all fired within a few months of one another.

When construed most strongly in her favor, the evidence presented by Olive at trial was sufficient to meet her burden of going forward with evidence that her termination was motivated by her age. The majority opines that "no reasonable person could construe the supervisor's comment that plaintiff could not adapt to change as being indicative of discriminatory intent based on age." I agree that, taken alone, the supervisor's comment is open to various interpretations, but when the evidence is construed most strongly in favor of Olive, coupled with the subsequent termination of Olive and two other older long-term employees, the comment constitutes evidence of discriminatory intent upon which reasonable minds could reach different conclusions.

Although the hospital asserted that Olive was fired for poor [*42] interpersonal skills, it is entirely possible that the jurors simply did not believe the hospital's stated reason for firing Olive.

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination * * * and * * * upon such rejection, no additional proof of discrimination is required.

*St. Mary's Honor Center v. Hicks (1993), 509 U.S. 502, 511, 113 S. Ct. 2742, 2749, 125 L. Ed. 2d 407, 418-419.* See, also, *Jules-Bryant v. Neoprobe Corp., 1999 Ohio App. LEXIS 3024* (June 30, 1999), Franklin App. No. 98AP924, unreported.

The majority cites *St. Mary's* for the proposition that, in order to show that the employer's explanation is a pretext for discrimination, a plaintiff must prove not only that the employer's stated reason is not credible but also that discrimination was the real reason for the plaintiff's termination. However, other courts have held that a plaintiff [*43] who sets forth a prima facie case need not present further evidence of discrimination.

> "A plaintiff who establishes a prima facie case need not introduce additional evidence of discrimination or retaliation to show pretext." *Eperesi v. Northernenvirotest Systems, Inc., 1999 U.S. App. LEXIS 25186,* (6th Cir. 1999), *1999 WL 825034,* unreported. (Citation omitted). "Rather, a prima facie case, coupled with disbelief of the employer's proffered reason, will suffice to support a finding of discrimination or retaliation." *Id.* (Citation omitted). The trial court "should not blindly accept the proffered reason as honest." *Id.*

*Jamison v. American Showa, 1999 Ohio App. LEXIS 6212* (Dec. 16, 1999), Delaware App. No. 99CAE-03-014, unreported. See also *Atkinson v. International Technegroup, Inc. (1995), 106 Ohio App. 3d 349, 360, 666 N.E.2d 257, 265,* discretionary appeal not allowed (1996) *74 Ohio St. 3d 1525, 660 N.E.2d 744* ("Rejection of the employer's proffered reasons will permit the fact finder to infer the ultimate fact of intentional discrimination.")

The majority opinion concedes that Olive presented a prima facie case of age discrimination. [*44] However, it concludes that the hospital was entitled to a directed verdict because Olive produced no direct evidence of discrimination, only circumstantial evidence. However, in *Mauzy v. Kelly Services, Inc. (1996), 75 Ohio St. 3d 578, 664 N.E.2d 1272* at paragraph one of the syllabus, the Ohio Supreme Court held that direct evidence of discrimination "refers to a method of proof, not a type of evidence." The court further stated that "direct evidence is evidence of any nature such as direct, **circumstantial**, or statistical evidence of discrimination that establishes that an adverse employment action was more likely than not motivated by discriminatory intent." *Id.* (Emphasis added.)

The record is clear that Olive presented a prima facie case of age discrimination. She also went forward pith evidence, albeit circumstantial, that the hospital's decision to terminate her was motivated by a discriminatory intent. When viewed most strongly in Olive's favor, the evidence was sufficient to allow the case to proceed to the jury. The jury weighed the evidence in reaching its verdict. By vacating the jury's

verdict, the majority has improperly substituted its judgment [*45] for that of the jury. I would affirm the trial court's decision.