UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Jessica Anderson ) | |
| ) | |
| Plaintiff, ) | Case No. C-1-02-355 |
| ) | |
| vs. ) | Judge Weber |
| ) | |
| Avon Products, Inc. ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT AVON PRODUCTS, INC'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Pursuant to the Court's Scheduling Order, Defendant Avon Products, Inc. ("Avon") hereby submits its Proposed Findings of Fact and Conclusions of Law supporting its Motion for Summary Judgment.

**I. PROPOSED FINDINGS OF FACT.**

1. Plaintiff began working for Avon as a temporary employee on October 20, 1997, in the Return Division as a Return Specialist.
2. Plaintiff worked as a Return Specialist until approximately September 1999 and in that capacity she communicated with bilingual Avon Representatives across the country to resolve issues they had with returned merchandise.
3. In the Fall of 1999, Avon made Plaintiff a full time employee and she started working on the liquid roll-on line.
4. Plaintiff then transferred to the second shift soap line sometime after Christmas of 1999.
5. During Plaintiff's employment at Avon, Plaintiff maintained a record of poor, and unsatisfactory, attendance.
6. At the time of Plaintiff's full time employment, she received all of Avon's guidelines and procedures, which included Avon's Attendance Policy ("Policy").
7. Plaintiff understood that, under the terms of the Policy, any attendance rate above 3.0 percent would be unacceptable.
8. Avon counseled Plaintiff several times regarding her poor attendance.
9. Plaintiff's supervisor in May 1998, Nancy Bonadio, placed a Memorandum in Plaintiff's personnel file indicating that Plaintiff had accumulated 85 hours of absence since the inception of her employment.
10. Ms. Bonadio indicated that "[i]f these absences continue to occur, Jessica's employment with Avon could be at risk."

11. In August 1999, Avon placed Plaintiff on restriction for a period of time and, once again, counseled her regarding her poor attendance.

12. On February 15, 2000, Plaintiff's supervisor, Brian Bilz, met with Plaintiff to discuss Plaintiff's poor attendance.

13. Mr. Bilz informed Plaintiff at that time that she needed to show immediate and sustained improvement or further disciplinary action would be taken, up to and including termination.

14. At the time of Plaintiff's hire as a full time employee, she received documents regarding Avon's policies and procedures.

15. Included in those documents, Plaintiff received Avon's Family and Medical Leave Policy.

16. At the time of Plaintiff's full time employment, she received, and voluntarily signed, documentation indicating that Avon could terminate its employment relationship at any time or that Plaintiff could terminate the relationship at any time.

17. Plaintiff understood that she did not have a contract with Avon for any specific period of time and that her employment with Avon was indefinite.

18. During her employment at Avon, Plaintiff requested FMLA leave on two occasions.

19. The first time Plaintiff requested FMLA leave was in March 2000.

20. Specifically, Plaintiff sought intermittent leave to attend doctor's visits with her grandmother.

21. In order to request the FMLA leave, Plaintiff's mother gave her these forms as they are standard forms.

22. Plaintiff completed the forms of documentation to substantiate her leave and provided these forms directly to Avon in an attempt to get leave.

23. Plaintiff knew that Avon's policy for FMLA leave required Plaintiff to fill out the FMLA form and provide medical documentation to Avon.

24. On April 11, 2000, before Plaintiff's request for leave, she spoke with Mr. Bilz indicating that she would not be able to work because of a medical condition.

25. Plaintiff's primary care physician, Dr. Hunter, had referred her to Dr. Leipzig for an opinion on a medical condition, hives, from which she was suffering.

26. Dr. Hunter further told Plaintiff to return to his office after she met with Dr. Leipzig.

27. Plaintiff had an appointment to see Dr. Leipzig on April 25, 2000.

28. That day, Plaintiff contacted Avon's medical department and spoke with Mary Anderson, R.N.

29. Plaintiff requested that Ms. Anderson send FMLA forms directly to her physician, Dr. Leipzig's office.

30. Ms. Anderson complied and faxed the forms to Dr. Leipzig's office.

31. Plaintiff completed a Request for Family Medical Leave while she was in Dr. Leipzig's office and returned it to Avon.

32. In completing the Request Form, Plaintiff did not indicate the reason for her leave.

33. Moreover, Plaintiff failed to even identify any reason for her attempted leave.

34. Plaintiff also gave Dr. Leipzig the Medical Certification form and asked him to complete it and return it to Avon.

35. Upon receiving Plaintiff's request for FMLA leave, on April 28, 2000, Pamela Myers, Business Unit Leader for the department in which Plaintiff worked, sent Plaintiff correspondence outlining Avon's policy on both Medical Leaves of Absence and FMLA Leave.

36. Plaintiff received this letter.

37. Included in the letter was a requirement that Plaintiff complete the FMLA Request Form and have her physician complete the certification form.

38. Plaintiff understood that she had an obligation to provide the FMLA form and her doctor's certification directly to Avon.

39. On April 28, 2000, Avon's nurse, Mary Anderson, R.N. sent Plaintiff a separate letter outlining Avon's policy on both Avon's Disability Plan and FMLA leave.

40. Plaintiff also received this letter.

41. This letter provided that Plaintiff's absence may qualify for FMLA, but she had to complete the FMLA forms and return them in 15 days.

42. At that time, Plaintiff understood that Avon's disability policy and FMLA leave policy were two separate programs.

43. Moreover, Plaintiff understood that she had an obligation to get the FMLA form and her doctor's certification directly to Avon.

44. Ms. Anderson wrote in the margin of her April 28 letter to Plaintiff that she had already faxed the certification forms directly to Dr. Leipzig's office.

45. Dr. Leipzig's office completed the Medical Certification form and faxed it back to Avon.

46. Plaintiff's request for FMLA leave and Dr. Leipzig's medical certification was reviewed by Marlene Wasson (formerly known as Marlene Mullins) a Supervisor in Avon's Human Resources Department.

47. Ms. Wasson has been with Avon for over 32 years.

48. In that capacity, Ms. Wasson handles, and reviews hundreds of FMLA Leave applications a year.

49. Ms. Wasson is very familiar with FMLA requirements and Avon's procedure for reviewing FMLA Leave applications.

50. The medical certification form describes what is meant as a "serious health condition" under the FMLA and, further, directs that the health care provider indicate if the patient's condition qualifies under any of the categories described.

51. The certification form directs the health care provider to indicate the probable duration of the condition.

52. Dr. Leipzig's certification was blank in several places and totally failed to indicate if Plaintiff's condition qualified under any of the categories described.

53. Dr. Leipzig's certification further failed to indicate the probable duration of Plaintiff's condition and Dr. Leipzig never provided Plaintiff with any documentation indicating that Plaintiff needed to be off work for a specific period of time.

54. Based on her experience, Ms. Wasson determined after reviewing Plaintiff's Request Form and Dr. Leipzig's medical certification that there was insufficient information upon which to base a determination if FMLA leave was warranted.

55. Ms. Wasson checked the box "disapproved" at the bottom of Plaintiff's Request Form and sent Plaintiff notification that her FMLA leave had not been approved.

56. After Plaintiff's visit with Dr. Leipzig, Plaintiff returned to Dr. Hunter's office for follow-up.

57. Plaintiff has no knowledge, and there is no evidence that Dr. Hunter provided any FMLA forms to Avon indicating Plaintiff needed to be off work.

58. At the time of Plaintiff's hire as a full time employee she received documents regarding Avon's policies and procedures.

59. Avon included its Disability Leave of Absence Policy in those documents.

60. In the correspondence sent by Pam Myers on April 28, 2000, Ms. Myers indicated that Avon placed Plaintiff on Medical Leave of Absence pending certification from Aetna Insurance Company.

61. Ms. Myers further informed Plaintiff that Aetna Insurance Company coordinated all Avon associates' medical leaves of absence and managed Avon's Disability Plan.

62. Ms. Myers indicated that Plaintiff should "call Aetna…and speak to a Case Manager so you can receive any benefits due as a result of your disability."

63. Plaintiff received this letter.

64. Like Pamela Myers' April 28, 2000 letter, Mary Anderson, R.N.'s April 28, 2000 letter outlined Avon's policy on both Avon's Disability Plan and procedure for obtaining benefits under that Plan.

65. Ms. Anderson's letter informed Plaintiff that "if you are going to be absent from work more than 7 consecutive days, you need to contact a representative of Aetna's Managed Disability Unit who will coordinate your claims and process any benefits due as a result of your disability… ."

66. Ms. Anderson informed Plaintiff that Avon's FMLA Leave and Aetna Disability Leave were two separate and distinct processes.

67. Plaintiff received Ms. Anderson's letter.

68. Separate and apart from Avon's process for FMLA leave, Aetna has a process for certifying disability leaves for Avon associates.

69. Aetna obtains information from Avon associates' health care providers and this information is **not** shared with Avon.

70. Avon receives notification from Aetna when an Avon associate is certified for a disability leave.

71. Avon is notified when Aetna's certification for an Avon associate's disability leave expires.

72. Through its own process, Aetna certified Plaintiff for disability leave from April 11, 2000 through May 7, 2000 and notified Avon of this certification.

73. At no time starting after May 8, 2000 did Plaintiff have any documentation extending her disability through Aetna.

74. As of May 10, 2000, both Plaintiff and Avon had notice by Aetna that Plaintiff's disability certification through Aetna expired on May 8, 2000.

75. Upon learning that Plaintiff's certification from Aetna had expired, Avon expected Plaintiff to return to work.

76. On approximately May 15, 2000, Pamela Myers spoke with Plaintiff and informed Plaintiff that she was only certified for time off through May 7, 2000 and that without medical certification extending her time off work she was absent without leave.

77. Plaintiff told Ms. Myers that she did not have any documentation certifying her off beyond May 7th.

78. As such, after May 7, 2000, Plaintiff was well aware that she was neither on FMLA leave nor receiving Aetna disability benefits.

79. In early May 2000, Plaintiff's supervisor, Brian Bilz called her and indicated that she was not on an approved leave and that she needed to provide documentation for that approval.

80. Plaintiff had at least one conversation with another Avon representative and, thus, Plaintiff understood that she was not on any approved leave.

81. In an attempt to resolve the issue of Plaintiff's absences, on June 2, 2000, Ms Myers sent Plaintiff a certified letter indicating that Plaintiff's Medical Leave of Absence through Aetna was approved only through May 7, 2000.

82. Ms. Myers further indicated:

> …Your [sic] have not contact me to communicate your need to be absent or to request time off as required by Avon policy. Your failure to contact Avon is in violation of policy. As a result, paperwork is being initiated to terminate your employment with Avon.
>
> If you have information that you think could affect this decision, please call me upon receipt of this certified letter. In the event that Avon does not receive formal notification from you by June 9, 2000, we will consider the termination decision irrevocable.

83. Plaintiff decided to write Ms. Myers a letter on June 5, 2000, because Plaintiff could not get in touch with Ms. Myers by phone.

84. This letter was not mailed until June 8, 2000.

85. As of this time, Plaintiff did not have any documentation from Dr. Hunter indicating that Plaintiff needed off work beyond May 7, 2000.

86. Plaintiff received a release to return to work from Dr. Hunter on June 12, 2000.

87. Dr. Hunter's release indicated that "Jessica has been under my care from 5-19 to present…."

88. Avon never received this release from Dr. Hunter and was not aware it existed until long after the decision to terminate Plaintiff's employment had been made.

89. Avon terminated Plaintiff's employment due to poor attendance and job abandonment.

90. Although Plaintiff was enrolled at Xavier University while she worked at Avon, upon her termination, Plaintiff worked for BW-3 as a cashier for approximately three months.

91. Because Plaintiff's friends were the owners of the BW-3, Plaintiff did not want to continue working in that position.

92. Plaintiff next worked for two driving schools, AAAA International and Drive-Rite from approximately February 2001 through January 2002.

93. Thereafter, Plaintiff decided to take a non-paid position working for Carbazaar, Inc ("Carbazaar").

94. While receiving no cash compensation, Plaintiff voluntarily worked in this non-paid position for approximately a year-and-a-half.

95. While Plaintiff volunteered at Carbazaar, there were several job opportunities available.

96. Plaintiff interviewed for a customer service position at Federal Express, but was


late and she believes that is why Federal Express did not make an offer to her.

      97.    Plaintiff worked part-time for BW-3 and she did not request time off from work because she was on a flexible schedule.

      98.    Plaintiff continued to work immediately after her termination from Avon, but ultimately quit in order to take the non-paid position with Carbazaar.

## II. PROPOSED CONCLUSIONS OF LAW.

      1.    Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

      2.    Summary judgment is appropriate where the opposing party fails to present sufficient evidence on an issue upon which that party has the burden of proof.

      3.    To survive summary judgment, Plaintiff "must set forth <u>specific facts</u> showing that there is a genuine issue for trial."

      4.    Rule 56(e) states that a party may not rest on the allegations contained in his pleadings to overcome a properly supported motion for summary judgment.

      5.    Avon is entitled to judgment as a matter of law on Plaintiff's entire Complaint.

      6.    Avon is entitled to summary judgment on Plaintiff's claim that Avon wrongfully disapproved Plaintiff's FMLA leave because Plaintiff can provide no evidence that she provided a timely and complete medical certification.

      7.    It is unlawful for any employer to deny the exercise of, or attempt to exercise any right provided under the FMLA.

      8.    Eligible employees are entitled to twelve work weeks of leave within any twelve-moth period because of a "serious health condition that makes the employee unable to perform the functions of the position of such employee."

      9.    Employers, before granting such leave, may require the request for leave to be supported by medical certification from the employee's health care provider.

      10.    If the employee cannot provide such certification before leave is taken, the employee must provide the certification within the time frame requested by the employer, but the employer must give the employee at least fifteen days from the time the employer requests the certification.

      11.    The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency.

      12.    No specific form of notification to the employee is provided by statute.

      13.    A certification is considered sufficient if it contains: (1) the date on which the serious health condition began; (2) the probable duration of the condition; (3) the medical facts within the knowledge of the health care provider regarding the condition; **and** (4) if the leave is for the purpose of caring for a family member, an estimate of the amount of time that the employee will be needed to care for the family member.

      14.    Where an employer provides an employee with a letter stating the requirement that medical certification is needed, the time to do so, and attaches the certification form to the letter, the employer does not infringe upon the employee's FMLA rights.

      15.    Avon required Plaintiff to provide medical certification from Plaintiff's health care provider.

      16.    Avon gave Plaintiff more than fifteen days, i.e., over thirty (30) days, from the

time Avon requested the certification.

17.     Plaintiff provided an incomplete medical certification that failed to provide information regarding Plaintiff's serious health condition, most importantly, the probable duration of her condition.

18.     Avon advised Plaintiff that her medical certification was incomplete and provided Plaintiff a reasonable opportunity to cure the deficiency.

19.     Based upon 29 C.F.R. § 825.305(b), which provides that an employer must afford an employee 15 days to provide a medical certification, courts generally construe 15 days as a reasonable time allowance.

20.     Although it is true that neither the FMLA nor the regulations define what constitutes a reasonable opportunity to cure, it seems unlikely that the Department of Labor intended that an employee's opportunity to cure an inadequate certification should expire before the end of the mandatory fifteen-day period for submitting a certification in the first instance.

21.     Even if an employer gave its employee a shorter time than 15 days, it is not automatically considered as unreasonable.

22.     FMLA regulations do not define what constitutes a "reasonable opportunity." This must be determined on a case by case basis. The regulations do contemplate that, in some instances, through no fault of their own, employees may be unable to comply with the medical certification deadlines set by the employer "unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts."

23.     Likewise, 29 C.F.R. 825.311(b) states the employees must provide certification within the time frame requested by the employer or as soon as reasonably possible under the particular facts and circumstances.

24.     After given a reasonable opportunity to cure any deficiency of her medical certification, it is the employee's responsibility to make sure that the complete certification is submitted in time.

25.     Avon notified Plaintiff that her medical certification was inadequate and gave her over thirty (30) days to provide an adequate medical certification.

26.     Over thirty days is a reasonable opportunity to cure the deficiency and provide an adequate medical certification and, therefore, it was Plaintiff's responsibility to make sure that the complete certification was submitted in time.

27.     Plaintiff is, and was, the person most able to determine that the initial certification was "wrong" and was also the person with the incentive and the burden, to have it corrected.

28.     Avon was justified in disapproving Plaintiff's requested FMLA leave and subsequently terminating her because of her: (a) unreported absences (b) failure to cure the deficiencies in her medical certification and (c) job abandonment.

29.     Avon provided a reasonable opportunity for Plaintiff to complete her medical certification, i.e., over thirty (30) days.

30.     Without showing any impossibility or impracticability, Plaintiff simply failed to submit a complete medical certification in a timely manner.

31.     Avon complied with the FMLA's requirement to give Plaintiff a reasonable opportunity to cure the deficiency of her medical certification and Avon did not wrongfully disapprove Plaintiff's FMLA leave request.

32.     Avon is entitled to summary judgment on Plaintiff's FMLA claim as a matter of law.

33.     Avon is entitled to summary judgment on Plaintiff's claim that Avon retaliated

against Plaintiff for invoking her rights under the FMLA because Plaintiff cannot establish a prima facie case of retaliation and because Avon has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

34.	The Sixth Circuit has adopted a three-step framework for courts to use in analyzing retaliation claims under the FMLA.

35.	Under this three-step framework, the initial burden of establishing a prima facie case of retaliation lies with Plaintiff.

36.	If Plaintiff is able to satisfy her burden of establishing a prima facie case, the burden of production shifts to Avon to articulate a legitimate, nondiscriminatory reason for the adverse employment action.

37.	Despite this shift in the burden of production, however, the burden of persuasion remains with Plaintiff throughout.

38.	Once Avon articulates a legitimate, nondiscriminatory reason for the adverse employment action, the inference of discrimination created by the prima facie case is destroyed.

39.	Plaintiff must then prove, by a preponderance of the evidence, that Avon's proffered reason was pretextual.

40.	To establish pretext, Plaintiff must show "either directly or indirectly that Avon's proffered explanation is unworthy of credence."

41.	Avon is entitled to summary judgment because (1) Plaintiff is unable to satisfy her prima facie case with regard to her retaliation claim; (2) Avon had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment; and (3) Plaintiff cannot present sufficient evidence of pretext to rebut this reason.

42.	To prove a prima facie case of retaliation by Avon, Plaintiff must prove, by a preponderance of the evidence, that: (1) she engaged in protected activity; (2) the activity was known to Avon; (3) she was subjected to an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse action.

43.	Plaintiff cannot prove her prima facie case because she cannot prove that Avon's termination decision was causally related to her having requested FMLA leave in April 2000.

44.	In order for Plaintiff to establish that Avon's termination decision was causally related to her having requested FMLA leave in April 2000, Plaintiff must show that Avon would not have terminated her employment "but for" Plaintiff's request for FMLA leave.

45.	Plaintiff cannot make this showing.

46.	Where a plaintiff presents no evidence demonstrating that either the employer's suspension or its denial of sick leave is causally related to the plaintiff's having taken FMLA leave, plaintiff cannot prove a prima facie case of retaliation.

47.	Where a plaintiff presents no evidence that would support a finding that, "when plaintiff provided his employer with the proper medical certification for his absences, the employer had an inclination to either deny the FMLA leave or later retaliate against plaintiff for it," plaintiff cannot not prove a prima facie case of retaliation and, thus, the defendant is entitled to summary judgment.

48.	Plaintiff cannot show that Avon retaliated against her for requesting leave under the FMLA.

49.	Plaintiff has provided no evidence that Avon's termination of her employment was causally related to Plaintiff's having requested FMLA leave.

50.	Plaintiff has presented no evidence that would support a finding that because she failed to provide proper medical certification for her absences prior to her termination, Avon had

an inclination to either deny her FMLA leave or later retaliate against her for it.

51. Plaintiff has not proven a prima facie case of retaliation and, thus, this Court should grant Avon summary judgment as a matter of law.

52. Even if Plaintiff could establish a prima facie case of retaliation, which she clearly cannot, Avon is still entitled to summary judgment because Avon has provided a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

53. Plaintiff had a history of absenteeism, severe enough that Avon counseled Plaintiff several times regarding her poor attendance.

54. Plaintiff's supervisor in May 1998, Ms. Bonadio, placed a Memorandum in Plaintiff's personnel file indicating that Plaintiff had accumulated 85 hours of absence since the inception of her employment.

55. Ms. Bonadio warned Plaintiff that "[i]f these absences continue to occur, Jessica's employment with Avon could be at risk."

56. Once again, in August 1999, Avon placed Plaintiff on restriction for a period of time and counseled her regarding her poor attendance.

57. On February 15, 2000, Plaintiff's supervisor, Mr. Bilz, met with Plaintiff to discuss Plaintiff's poor attendance.

58. Mr. Bilz warned Plaintiff that she needed to show immediate and sustained improvement or further disciplinary action would be taken, up to and including termination.

59. Plaintiff never provided the required medical certification and, thus, her unsupported absences violated Avon's Attendance Policy.

60. This reason, together with Plaintiff's poor attendance record as articulated, is a legitimate, nondiscriminatory reason for Avon to terminate Plaintiff.

61. In order to survive a motion for summary judgment, Plaintiff must set forth legally sufficient evidence that the legitimate, nondiscriminatory reason set forth above is a pretext for retaliation.

62. Plaintiff has failed to meet this burden.

63. Plaintiff admits that Avon counseled her several times regarding her poor attendance.

64. A plaintiff "must do more than simply impugn the legitimacy of the asserted justification; in addition the plaintiff must also adduce evidence of the employer's discriminatory animus."

65. The plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a discrimination claim to withstand a motion for summary judgment.

66. Avon had an honest belief in its proffered reason for terminating Plaintiff's employment.

67. Plaintiff's attendance record was well documented, as was Avon's attempt to help Plaintiff's attendance by counseling her on improvement and warning her of further disciplinary action, up to and including termination, if she did not show improvement.

68. Plaintiff's attendance simply continued to decline until Avon decided to terminate her employment due to job abandonment.

69. Because Plaintiff cannot show a genuine issue of material fact as to whether Avon's proffered reason for her termination is pretextual, Plaintiff's claim fails as a matter of law and Avon is entitled to summary judgment on Plaintiff's retaliation claim.

70. It is well established in the Sixth Circuit and Ohio that courts cannot second-

guess an employer's business judgment as it relates to the termination of employees.

71. In discharge cases, unless a clear violation is shown, it is not appropriate for courts to second guess the business judgment of employers in personnel matters.

72. Courts are not here to second guess legitimate employment decisions made by employers even if "the Court might have acted differently had it been the employer."

73. Courts must avoid stepping into the role of super personnel manager and must not second guess legitimate business decisions.

74. Plaintiff cannot prove a claim of retaliation because: (1) she cannot show a causal connection exists between her request for FMLA leave and Avon's termination decision; and (2) she cannot provide any evidence that Avon's legitimate, nondiscriminatory reason for her termination is a mere pretext for discrimination.

75. Avon is entitled to summary judgment on Plaintiff's retaliation claim as a matter of law.

76. Even if Plaintiff has met her burden, which Avon denies, Avon is entitled to summary judgment because Plaintiff has failed to adequately mitigate her alleged damages.

77. Any employer who violates the FMLA shall be liable to any eligible employee for damages equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation.

78. The duty to mitigate damages after discrimination has occurred is statutorily imposed.

79. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the backpay otherwise allowable.

80. Once Plaintiff establishes a _prima facie_ case and presents evidence on the issue of damages, which Avon denies, the burden of producing sufficient evidence to establish Plaintiff's lack of diligence shifts to Avon.

81. Avon must show that substantially equivalent positions were available and Plaintiff failed to use reasonable diligence in seeking them out.

82. There were substantially equivalent positions available, but Plaintiff failed to use reasonable diligence to seek these positions out.

83. Paying jobs were plentiful for individuals of Plaintiff's age, skill and experience.

84. Plaintiff lacked diligence to seek these positions out.

85. Plaintiff has failed to adequately mitigate her alleged damages.

86. Avon is entitled to summary judgment on Plaintiff's failure to mitigate as a matter of law.

87. Avon is entitled to summary judgment in its favor.

                                        Respectfully submitted,

                                        /s/ Jeffery L. VanWay
                                        Ellen J. Garling (0043554)
                                        BAKER & HOSTETLER, LLP
                                        Capitol Square, Suite 2100
                                        65 East State Street
                                        Columbus, Ohio  43215
                                        (614) 228-1541

                                        and

                                          Jeffery L. VanWay (0069175)
                                          Bryant L. Brewer (0072152)
                                          BAKER & HOSTETLER, LLP
                                          312 Walnut Street, Suite 3200
                                          Cincinnati, Ohio  45202
                                          (513) 929-3400
                                          (513) 929-0303 – Fax
                                          email: jvanway@bakerlaw.com
                                          Trial Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

     I hereby certify that on November 21, 2003 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF participants and I hereby certify that I have mailed the foregoing by regular U.S. mail, postage prepaid on this 21st day of November, 2003, to Daniel A. Kruse, Attorney for Plaintiff, 1029 Main Street, Cincinnati, Ohio 45202.

                                          /s/ Jeffery VanWay
                                          Jeffery VanWay

G:\CIdata\blb5734\Avon 83523\Anderson\Pleadings\Proposed Findings of Fact and Conclusions of Law (Revised).doc