UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JESSICA ANDERSON,

        Plaintiff,

    v.                                                Case No. C-1-02-355

AVON PRODUCTS, INC.,

        Defendant.

## ORDER

    This matter is before the Court upon defendant Avon Products, Inc.'s motion for summary judgment (doc. 30), plaintiff Jessica Anderson's opposing memorandum (doc. 35), and defendant's reply (doc. 39). Each party has filed a highlighted version of the opposing party's proposed findings of fact and conclusions of law (doc. 37; doc. 39, attachment). Also before the Court is defendant's motion to strike affidavit (doc. 39).

### I. Introduction

    Plaintiff originally filed this action in the Court of Common Pleas of Butler County, Ohio. Defendant removed the action to this Court. Plaintiff brings claims for wrongful and discriminatory termination under the Family and Medical Leave Act (FMLA). In support of her claims, plaintiff alleges that at all relevant times, she was employed by defendant at its place of business in Cincinnati, Ohio. On or about April 25, 2000, plaintiff requested a medical leave

1

under the FMLA due to her own serious health condition. Plaintiff's request for leave was wrongfully disapproved by defendant on April 28, 2000, in violation of the provisions of the FMLA and specifically 29 U.S.C. § 2615. In early June of that same year, plaintiff was advised that she had been terminated from her employment because of her absence from work.

## II. Undisputed facts

The undisputed facts are as follows.

1. Plaintiff Jessica Anderson was an employee of defendant Avon Products, Inc. from October 20, 1997 until June 9, 2000.

2. During all times pertinent to this lawsuit, plaintiff suffered from a condition known as chronic urticaria and angiodema.

3. At the time of plaintiff's hire as a full-time employee, she received all of Avon's guidelines and procedures, which included Avon's Attendance Policy and Avon's Family and Medical Leave Policy.

4. Avon counseled plaintiff several times regarding her poor attendance. On February 15, 2000, plaintiff's supervisor, Brian Bilz, met with plaintiff to discuss the issue. Mr. Bilz informed plaintiff at that time that she needed to show immediate and sustained improvement or further disciplinary action would be taken, up to and including termination.

5. During her employment, plaintiff requested FMLA leave on two occasions. The first time plaintiff requested FMLA leave was in March 2000, at which time plaintiff sought intermittent leave to attend doctor's visits with her grandmother.

6. Plaintiff knew that Avon's policy for FMLA leave required her to fill out an FMLA form and provide medical documentation to Avon.

7. On April 11, 2000, prior to making the second leave request, plaintiff indicated to Bilz that she would not be able to work because of a medical condition.

8. Plaintiff's primary care physician, Dr. Hunter, had referred plaintiff to Dr. Leipzig for an opinion on a medical condition, hives, from which plaintiff was suffering. Dr. Hunter told plaintiff to return to his office after she met with Dr. Leipzig.

9. On April 25 or 26, 2000, plaintiff had a scheduled office visit with Dr. Leipzig. Prior to her visit, plaintiff contacted defendant's medical department and spoke with Mary Anderson, R.N. Plaintiff requested that Anderson send FMLA forms directly to Dr. Leipzig's office.

10. Per plaintiff's request, defendant faxed directly to Dr. Leipzig's office a Request for Family Medical Leave form for Jessica to complete and a Certification of Health Care Provider form for Dr. Leipzig to complete. The Certification form which Dr. Leipzig received describes what is meant as a "serious health condition" under the FMLA and instructs the health care provider to indicate if the patient's condition qualifies under any of the categories described. The form directs the health care provider to indicate the probable duration of the condition.

11. Plaintiff signed the Request for Family Medical Leave form and left it with Dr. Leipzig. Dr. Leipzig filled out and signed the Certification of Health Care Provider form and faxed it, together with the Request form, to the nurse at Avon Products. (Exh. 5 to plaintiff's depo.).

12. The Certification form filled out by Dr. Leipzig was left blank in several places. The parties dispute whether the form failed to indicate if plaintiff's condition qualified under any of the categories described as well as the probable duration of plaintiff's condition, and whether Dr. Leipzig provided plaintiff with any documentation indicating that plaintiff needed to be off work for a specific period of time.

13. Upon receipt of the Request form and the Certification form, a supervisor in defendant's Human Resources Department, Marlene Wasson, made a determination that she would not approve the requested leave because Dr. Leipzig had not completely filled out the form and had failed to answer certain questions on the form.

14. Subsequently, on April 28, 2000, Wasson returned to plaintiff by ordinary mail plaintiff's Request for Family Medical Leave form, on which it was noted that the leave had not been approved. The form provided no explanation whatsoever as to why leave had not been approved. Wasson did not return Dr. Leipzig's certification to plaintiff. Nor did Wasson notify Dr. Leipzig that the Certification form was deemed by her to be incomplete.

15. In the April 28th correspondence, Myers indicated that Avon had placed plaintiff on Medical Leave of Absence pending certification from Aetna Insurance Co., the manager of Avon's Disability Plan. (Exh. 12 to plaintiff's depo.). Myers informed plaintiff that Aetna coordinated all associates' medical leaves of absence and managed Avon's Disability Plan. Myers indicated that plaintiff should contact Aetna and speak to a case manager so that she could receive any benefits due as a result of her disability. Plaintiff received this letter.

16. Also on April 28, 2000, Mary Anderson sent plaintiff a separate letter, which plaintiff received. (Exh. 13 to plaintiff's depo.). The letter outlined Avon's policy on both Avon's Disability Plan and FMLA leave. The letter stated that plaintiff's absence may qualify for FMLA but plaintiff needed to complete the FMLA forms and return them in 15 days. Anderson wrote in the margin of the letter that she had already faxed the certification forms directly to Dr. Leipzig's office.

17. Aetna Insurance Company has a process for certifying disability leave for Avon associates which is separate from the Avon process for FMLA leave. Through its own process, Aetna certified plaintiff for disability leave from April 11, 2000 through May 7, 2000, and notified Avon of this certification.

18. In early May 2000, Bilz called plaintiff and indicated that plaintiff was not on approved leave and she needed to provide documentation for that approval. Plaintiff understood that she was not on approved leave.

19. In an attempt to resolve the issue of plaintiff's absences, on June 2, 2000, Pamela Myers sent plaintiff a certified letter indicating that plaintiff's medical leave of absence through Aetna was approved only through May 8, 2000. (Exh. 14 to plaintiff's depo.). Myers further stated,

> . . . Your [sic] have not contacted me to communicate your need to be absent or to request time off as required by Avon policy. Your failure to contact Avon is in violation of policy. As a result, paperwork is being initiated to terminate your employment with Avon.
>
> If you have information that you think could affect this decision, please call me upon receipt of this certified letter. In the event that Avon does not receive formal notification from you by June 9, 2000, we will consider the termination decision irrevocable.

20. Plaintiff decided to write Myers a letter on June 5, 2000, because she could not get in touch with Myers by phone. The letter was not mailed until June 8, 2000. (Exh. 15 to plaintiff's depo.).

21. Plaintiff received a release to return to work from Dr. Hunter on June 12, 2000. The release stated that, "Jessica has been under my care from 5-19 to present . . ."

22. Plaintiff was terminated from her employment with Avon on June 9, 2000.

23. Upon her termination, plaintiff worked part-time for BW-3 as a cashier for approximately three months.

24. Plaintiff next worked for two driving schools from approximately February 2001 through January 2002.

25. Thereafter, plaintiff decided to take a non-paid position working for Carbazaar, Inc. She worked in that position for approximately one and one-half years. During this time period, several job opportunities were available. Plaintiff interviewed for a customer service position at Federal Express, but she believes the company did not make an offer to her because she was late for the interview.

### III. Motion for summary judgment

Defendant moves for summary judgment on plaintiff's claim that it wrongfully disapproved her FMLA leave on the ground that plaintiff can produce no evidence that she provided a timely and complete medical certification. Defendant claims that it notified plaintiff that her medical certification was inadequate and gave her over thirty days to provide an adequate certification. In support of its contention, defendant refers to correspondence from Pamela Myers (exh. 14 to plaintiff's depo.). Defendant also refers to plaintiff's deposition testimony regarding a

telephone call from Bilz during which he informed plaintiff that she needed to contact the nurse and that there was some question as to why plaintiff had not returned, to which plaintiff responded that she was still on leave with her doctor and he had not released her until June 13, 2000 (Plaintiff's depo., p. 219).

Defendant also avers that it is entitled to summary judgment on plaintiff's claim that it retaliated against her for taking FMLA leave. Defendant claims that plaintiff cannot establish a prima facie case of retaliation because she cannot prove that Avon's termination decision was causally related to her request for FMLA leave in April 2000. Defendant further claims that it had a legitimate, nondiscriminatory reason for terminating plaintiff's employment, i.e., plaintiff had a history of absenteeism and poor attendance and she never provided the required certification for her requested FMLA leave, and her unsupported absences violated Avon's Attendance Policy. Defendant also alleges that plaintiff cannot show that its proffered reason is pretextual because the Court cannot second-guess defendant's business judgment, and plaintiff's disagreement with defendant's honest business judgment regarding her poor attendance and job abandonment are insufficient to create evidence of pretext.

Finally, defendant argues that even if the Court determines that plaintiff has met her burden of proof, it is entitled to summary judgment because plaintiff has failed to adequately mitigate her damages.

In response, plaintiff alleges that defendant failed to comply with 29 C.F.R. § 825.305(b), which requires an employer to (1) advise the employee whenever it deems an FMLA certification to be incomplete, and (2) provide the employee a reasonable opportunity to cure any such deficiency. Plaintiff asserts that she was never advised that the FMLA certification submitted on

her behalf by Dr. Leipzig was incomplete, and she contends that the application was denied without explanation. Plaintiff also avers that there is a genuine issue of fact as to whether Dr. Leipzig's medical certification provided sufficient information to support FMLA leave.

As to her retaliation claim, plaintiff argues that the close proximity in time between the invocation of her rights under the FMLA and her discharge, coupled with the fact that the ostensible reason for her termination was her absence from work, are sufficient evidence for a reasonable person to conclude that defendant retaliated against plaintiff. Plaintiff contends that defendant cannot lawfully deny plaintiff her right to take leave under the FMLA and then rely upon her absences as a legitimate reason for termination.

Finally, plaintiff alleges that there is an issue of fact as to whether she has used reasonable efforts to mitigate her damages.

In its reply, defendant moves the Court to strike an affidavit submitted by plaintiff in support of her claims on the ground that it contradicts her deposition testimony. Beyond that, defendant simply reiterates the arguments presented in its summary judgment motion.

### III. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action.  This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby***, 477 U.S. 242, 248 (1986)

(quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Id.* at 249 (citing *Cities Serv.*, 391 U.S. at 288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted.  *Anderson*, 477 U.S. at 249.

### IV. Applicable law

Title 29 U.S.C. § 2615(a)(1) states that, "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." Title 29 U.S.C. § 2612(a)(1)(D) states that ". . . an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

An employer may require that a request for leave under § 2612(a)(1)(D) be supported by a certification issued by the eligible employee's health care provider. 29 U.S.C. § 2613(a). Section 2613(a) requires the employee to timely provide a copy of such certification to the employer.

Section 2613(b) provides that such certification shall be sufficient if it states the following:

> (1) the date on which the serious health condition commenced;
> (2) the probable duration of the condition;
> (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition;
> (4)(A) . . . ; and
> (B) for purposes of leave under section 2612(a)(1)(D) of this title, a statement that the employee is unable to perform the functions of the position of the employee;. . . .

The federal regulations applicable to the FMLA provide that if the leave "is foreseeable and at least 30 days notice has been provided, the employee should provide the medical certification before the leave begins." 29 CFR § 825.305(b). If this is not possible, "the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." *Id.*

Section 825.305(c) provides that generally "the employer should request that an employee furnish certification from a health care provider at the time the employee gives notice of the need for leave or within two business days thereafter, or, in the case of unforeseen leave, within two business days after the leave commences." Subsection (d) requires the employer to advise an employee at the time she requests certification of "the anticipated consequences of [her] failure to provide adequate certification." It further requires that the employer "shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency."

In retaliatory discharge cases under the FMLA relying upon indirect evidence, the three-step *McDonnell Douglas* paradigm applies. See *Skrjanc v. Great Lakes Power Service Co.,*

272 F.3d 309, 314 (6th Cir. 2001). The plaintiff must first prove a prima facie case. A plaintiff may establish a prima facie case of retaliatory discharge under the FMLA by showing that (1) she availed herself of a protected right under the FMLA, (2) she was adversely affected by an employment decision, and (3) there is a causal connection between her exercise of a right under the FMLA and the adverse employment decision. *Id.* at 314 (citing ***Canitia v. Yellow Freight Sys., Inc.***, 903 F.2d 1064, 1066 (6th Cir.1990)). The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 315. If the defendant articulates such a reason, then the plaintiff has the burden of showing that the articulated reason is a pretext for discrimination. *Id.*

In order to establish a causal link, the plaintiff must "proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" ***Zanders v. National R.R. Passenger Corp.***, 898 F.2d 1127, 1135 (6th Cir.1990) (quoting ***Cohen v. Fred Meyer, Inc.***, 686 F.2d 793, 796 (9th Cir.1982)). The Sixth Circuit has found that temporal proximity between the protected activity and the adverse action is not, in and of itself, sufficient to establish a causal connection. See , e.g., ***Cooper v. City of North Olmstead,*** 795 F.2d 1265 (6th Cir. 1986)). In *Nguyen*, however, the Sixth Circuit indicated that there may be circumstances where temporal proximity alone would be sufficient to support an inference of a causal connection, although the Court noted that such circumstances were lacking in the case before it and gave no indication of what circumstances might suffice. 229 F.3d at 567.

The plaintiff's burden at the prima facie stage is minimal, requiring only that the plaintiff "put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity . . ." *Id.*

Although the Court should refrain from probing an employer's business judgment, business judgment is not an absolute defense to unlawful discrimination. ***Wexler v. White's Furniture, Inc***., 317 F.3d 564, 576 (6th Cir. 2003)(citing ***E.E.O.C. v. Yenkin-Majestic Paint Corp.,*** 112 F.3d 831, 835 (6th Cir.1997)). "[T]he reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." ***Id.*** One way for the plaintiff to establish pretext is to show that the "'asserted business judgment was so ridden with error that defendant could not honestly have relied upon it.'" ***Id.*** (quoting ***In re Lewis,*** 845 F.2d 23, 633 (6th Cir. 1988)).

## V. Opinion

Initially, the Court declines to strike plaintiff's affidavit from the record or to disregard the affidavit. It does not appear to the Court that the affidavit contradicts plaintiff's deposition testimony with regard to the specific matters cited by defendant.

Upon a careful review of the record, the Court finds that defendant is not entitled to summary judgment on plaintiff's FMLA claims. First, there are disputed issues of fact underlying resolution of plaintiff's claim that she was wrongfully terminated in violation of the FMLA, including issues of fact as to whether defendant ever notified plaintiff that it deemed the physician's certification submitted in support of her request for FMLA leave to be inadequate; whether defendant provided plaintiff with a reasonable opportunity to cure any such deficiency; and whether the certification submitted by plaintiff's physician was in fact sufficient under the FMLA.

Second, there are disputed issues of fact with regard to plaintiff's retaliation claim. Plaintiff has established that she availed herself of a protected right by requesting leave under the FMLA. Plaintiff has also shown that defendant took an adverse employment action against her by terminating her employment before she had returned to work following her absence due to illness. The circumstances surrounding plaintiff's termination raise an issue as to whether there was a causal connection between plaintiff's request for FMLA leave and her discharge and whether the reasons given by defendant for denying plaintiff FMLA leave and then discharging plaintiff because of her unapproved absence are pretextual. Accordingly, defendant is not entitled to summary judgment on the retaliation claim.

## VI. Conclusion

It is therefore **ORDERED** that defendant's motion for summary judgment (doc. 30) and motion to strike affidavit (doc. 39) are **DENIED.** This case will proceed to trial in accordance with the schedule established by the Court.

**IT IS SO ORDERED.**

S/ Herman J. Weber
HERMAN J. WEBER
SENIOR JUDGE, UNITED STATES DISTRICT COURT

J:\HJWA\02-355fmla.wpd